NORMAN TENOVSKY & another[1] vs. ALLIANCE INSURANCE
GROUP & others.[2]

No. 93-P-1783.

Suffolk. January 18, 1995. - March 22, 1996.

Present: BROWN, SMITH, & JACOBS, JJ.

Further appellate review granted, 422 Mass. 1108 (1996).

*Insurance,* Liability insurance, Notice. *Words,* "Claims-made policy."

Where the provisions of an insurance policy required that claims be made
during the policy period but did not expressly require the insured to
give notice to the insurer of such claims within the policy period, a
Superior Court judge erred in ordering judgment in favor of an insurer
with respect to its obligation to indemnify or defend claims that were
properly made within the policy period but which the insured did not
report to the insurer until more than two years later, when a civil action
was filed. [205-208]

CIVIL ACTION commenced in the Superior Court Department on July 19, 1991.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

*Nancy M. McLean* for the plaintiffs.

*Richard J. Riley* for Alliance Syndicate, Inc.

BROWN, J. The plaintiffs, Norman and Cecile A. Tenovsky, appeal from summary judgment entered for the defendant Alliance Insurance Group (Alliance), in a declaratory judgment action in which cross motions for summary judgment were filed. A Superior Court judge concluded that the insurance

---

[1]Cecile A. Tenovsky.

[2] The other defendants named in the complaint are G & H Steel Services, Inc., Liberty Mutual Insurance Company, and Turner Construction Company. The defendant Alliance Insurance Group is also referred to by the parties and in some pleadings as Alliance Syndicate, Inc. The judgment appealed from states that "[n]either Alliance Insurance Group nor Alliance Syndicate, Inc. has any liability . . . on account of any injury said to have been suffered by Norman Tenovsky on or about October 15, 1987."

policy at issue is a so-called claims-made policy, that the case was controlled by *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. 862 (1990), and that, since the insured, G & H Steel Services, Inc. (G & H Steel), failed to notify Alliance until over three years after the incident giving rise to the claim, Alliance, as matter of law, was under no obligation to indemnify or defend G & H Steel in a tort action brought by the plaintiffs.

The material before the judge discloses the following pertinent facts. On October 15, 1987, the plaintiff Norman Tenovsky was injured on the job while walking through a partially constructed building. He alleges that G & H Steel was responsible for defective workmanship that caused his injury. On June 23, 1988, and again on July 8, 1988, the plaintiffs, by certified mail, advised G & H Steel of their "claim." G & H Steel, however, never forwarded the plaintiffs' claim letters to Alliance.

On October 1, 1990, the plaintiffs filed an action in the Superior Court. Alliance, until this point unaware of the claim, received a copy of the summons and complaint from G & H Steel in November of 1990. On December 19, 1990, Alliance — not having seen the 1988 claim letters — wrote G & H Steel that the plaintiffs' claim did not appear to be covered by the policy. According to Alliance's December 19 letter, "[a]s this is a claims made policy, any claim must be made and reported during the policy period. . . . [I]t is clear that a claim was not made until after your policy had expired."

We turn to the policy. Alliance had issued the policy to G & H Steel for the period of June 16, 1988, through June 16, 1989. It appears that the policy is some species of claims-made policy.[3] On appeal, Alliance does not appear to dispute that the claim letters written by the plaintiffs to G & H Steel in June and July of 1988 were during the policy period and

---

[3]G & H Steel had specifically requested a claims-made policy, and, in so doing, paid a lower premium rate than it would have if the policy were an occurrence policy. The policy, in two instances, purports to provide claims-made coverage. The words "Provides Claims Made Coverage" appear at the top of page one of the policy. In addition, the words "Commercial General Liability (Claims-Made)" appear in the policy's declarations. Additional language in the policy consistent with typical claims-made policies is discussed in note 5, *infra*. See generally *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. at 863-864; *National Union Fire Ins. Co.* v. *Talcott*, 931 F.2d 166, 168 (1st Cir. 1991).

constituted a valid claim under the policy.[4] There remains, however, the issue whether Alliance also had to receive *notice* of the plaintiffs' claim within the policy period.

By its terms, the policy requires only that G & H Steel provide Alliance with "prompt written notice" of any claims or suits and "immediately send [Alliance] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' " Compare *Johnson Controls, Inc.* v. *Bowes,* 381 Mass. 278, 279 n.2 (1980) (policy provided, in part, that, "[i]f claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative"). Again, while the policy has elaborate provisions requiring that *claims* be received in the policy year (or within a slightly extended, and specified, period), nowhere in the policy is it expressly stated that G & H Steel is required to report claims to Alliance within the policy period.[5] We must be careful not to blur the distinction between making a claim and notifying an insurer of a claim that has been made. The two acts are different in many ways, and the policy before us has requirements for

---

[4]The first section of the policy, entitled "Coverages," provides that "this insurance applies to 'bodily injury' . . . only if a claim for damages is first made against any insured during the policy period. . . . A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any insured or by us [Alliance], whichever comes first."

[5]G & H Steel's insurance with Alliance was canceled as of January 1, 1989 (and, consequently, G & H Steel received a "return premium" of $67,485). Alliance argues that, under a provision of the policy applicable in the event of cancellation, "G & H Steel had sixty days after cancellation in which to notify Alliance of the claim made against it by the [plaintiffs]. Yet G & H Steel failed to report the [plaintiffs'] claim within the extended reporting period." Provisions for an extended reporting period are typical in claims-made policies, *Chas. T. Main* v. *Fireman's Fund Ins. Co.,* 406 Mass. at 864, and the presence of such a provision in the policy before us supports our conclusion that this is a claims-made policy. (If the Alliance policy were an occurrence policy, as opposed to a claims-made policy, this language would have been inappropriate. "Coverage is effective in an occurrence policy if the covered act or covered omission occurs within the policy period, regardless of the date of discovery." *Id.* at 863.) We do not, however, agree with Alliance's interpretation of the provision. The extended reporting period provision in the policy before us applies only to the *making of a claim*; there is no language providing for an extension of any reporting period for *notice* to an insurer of a claim having been made.

making a claim (to the insured or the insurer) that are separate and distinct from the requirements for notifying the insurer of a claim that has been made. See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985) (language in policy will be construed according to its ordinary meaning).

Our reading of *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. at 864-865, leads us to conclude that the policy in that case differed materially from the policy before us. That opinion speaks of "two types of notice requirements found in policies. One is a requirement that notice of the claim be given to the insurer 'as soon as practicable' after the event which gives rise to coverage. . . . The other type of notice provision requires reporting of the claim during the term of the policy or within a short period of time (thirty or sixty days) following the expiration of the policy." *Id.* at 864. The policy in the *Chas. T. Main* case had a " 'within the policy year' type of reporting requirement which . . . was not met." *Id.* at 865-866. See also *National Union Ins. Co.* v. *Talcott*, 931 F.2d 166, 167 (1st Cir. 1991) ("policy specifically provided that all claims brought against the insured had to be reported during the policy period in which the claim was first made"). As we have made clear above, the policy before us does not have a requirement that notice be given to the insurer "within the policy year"; rather, it has a requirement that G & H Steel provide Alliance with "prompt written notice" of a claim and "immediately send [Alliance] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' "

There is also the argument that a claims-made policy need not contain an express requirement that the insurer receive notice within the policy period; according to Alliance, *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. at 864-866, teaches that all claims-made policies require notice to the insurer within the policy period. We are unwilling to read that opinion so broadly, especially where the policy in that case is distinguishable in critical respects from the policy before us.

Accordingly, G & H Steel's failure to notify Alliance of the plaintiffs' claim within the policy year did not justify Alliance's denial of coverage, and summary judgment in favor of Alliance on that basis should not have entered. There may be other grounds for denial of coverage: specifically, Alliance

could argue that G & H Steel failed to provide Alliance with "prompt written notice" of the plaintiffs' claim. As to this issue, however, Alliance may not rely on lateness of notice to avoid coverage in the absence of demonstrated prejudice. See *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. at 865-866 (G. L. c. 175, § 112, while not applicable to the "within the year" reporting requirement, does apply to the "soon as practicable" type of notice). See also *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. at 282.[6]

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.[7]

*So ordered.*

---

[6]The motion judge did not base his finding of no coverage on a determination that Alliance was prejudiced by late notification, as evidenced by his statement that, "given the applicable controlling authority, *Chas. T. Main, Inc.* v. *Fireman's Fund Insurance Co., supra* at 865-866, this Court need not enter into such a calculus." In dictum, however, he noted that "an unexplained three-year hiatus is *per se* unfairly prejudicial." We disagree. A three-year delay is not uncommon in tort cases given the generally applicable statute of limitations, G. L. c. 260, § 2A. Any analysis of the prejudice issue in this case appears to be quite complex and could involve deciding issues of disputed fact.

[7]Deciding as we do, we decline the plaintiffs' invitation to find that claims-made policies violate the public policy of the Commonwealth.