_____

No. 95-3090EM
_____

Lexington Insurance Company,          *
                                      *
        Plaintiff - Appellee,         *
                                      *   Appeal from the United States
        v.                            *   District Court for the
                                      *   Eastern District of Missouri.
St. Louis University,                 *
                                      *
        Defendant - Appellant.        *

_____

Submitted:  February 15, 1996

Filed:  July 8, 1996
_____

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

LOKEN, Circuit Judge.

Lexington Insurance Company ("Lexington"), a London-based insurer, issued a liability policy to St. Louis University for claims made during the period July 1, 1990, through July 1, 1991. On May 20, 1991, Shelly McCormick sued the University for medical malpractice allegedly committed in 1979. The University mistakenly listed McCormick's claim as a 1979 rather than a 1991 claim on "loss run" reports submitted to Lexington before the policy expired. Therefore, the district court[1] granted summary judgment declaring that Lexington need not indemnify the University for McCormick's claim because it was not made and reported during the policy period. The University appeals, seeking to distinguish

_____

[1]The HONORABLE CAROL E. JACKSON, United States District Judge for the Eastern District of Missouri.

controlling Missouri and Eighth Circuit cases construing claims made policies.  We affirm.

1.  The issues here turn on the crucial difference between "occurrence" and "claims made" liability insurance policies.  Under an occurrence policy, there is coverage for negligent conduct of the insured that occurs during the policy period.  A claims made policy, on the other hand, provides coverage if the third party's claim is made against the insured, and brought to the insurer's attention, during the term of the policy.  See Esmailzadeh v. Johnson & Speakman, 869 F.2d 422, 425 (8th Cir. 1989).  Both types of policies require the insured to promptly notify the insurer of possible covered losses.  With a claims made policy, however, that notice is not simply part of the insured's duty to cooperate.  It defines the limits of the insurer's obligation -- if there is no timely notice, there is no coverage.  A claims made policy "allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty."  FDIC v. St. Paul Fire & Marine Ins. Co., 993 F.2d 155, 158 (8th Cir. 1993).

Like many States, Missouri has adopted regulations prohibiting unfair insurance claims settlement practices.  One of those regulations, adapted from prior court decisions, provides:

> No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time following any loss, unless this failure operates to prejudice the rights of the insurer.

20 Mo. Code Regs. § 100-1.020(4).  In Esmailzadeh, we held that a comparable Minnesota regulation did not apply to claims made policies. Unless there is timely notice, the claim is not covered, we explained, so excusing tardy notice "would alter a basic term of the insurance contract." 869 F.2d at 424.

The Missouri Courts of Appeals have followed <u>Esmailzadeh</u>, holding that an insurer need not prove prejudice to avoid coverage under a claims made policy if the claim was not reported until after the policy expired. <u>See</u> <u>Insurance Placements, Inc. v. Utica Mut. Ins. Co.</u>, 917 S.W.2d 592, 597 (Mo. App. 1996); <u>Continental Casualty Co. v. Maxwell</u>, 799 S.W.2d 882, 886-87 (Mo. App. 1990).  As the district court recognized, this principle is governing law in a diversity case.  The question then is whether the University can avoid its grasp.

2. Lexington's claims made policy insured the University for medical malpractice losses that exceeded $2 million.  The policy's Hospital Professional Liability endorsement covered:

> all sums which the Named Insured shall become legally obligated to pay as damages because of Bodily Injury <u>caused by a Medical Incident which results in a claim or claims being first made, in writing, against the Insured during the period of this Policy.</u>

(Emphasis added.)  Noting that the insuring clauses in the policies at issue in <u>Esmailzadeh</u> and other cases covered "claims first made *and reported*," 869 F.2d at 423, the University argues that the absence of "and reported" language in Lexington's insuring clause means that the prejudice rule of the above-quoted regulation should apply.  The district court rejected that contention.  Looking at the policy as a whole, the court held that it should be construed like other claims made policies.  We agree.

The Lexington policy begins, "THIS IS A CLAIMS MADE POLICY."  The policy's Reporting and Claims Handling Endorsement provides that the University "shall give" Lexington notice of each claim "as soon as practicable," and in any event, "during the period of this Policy."  The Reporting and Claims Handling Endorsement expressly provides that compliance with these notice provisions is a "condition of the Insured's right to indemnity under this Policy."

The Hospital Professional Liability Endorsement likewise includes the duty to notify in its "Conditions" section.

This policy language making notice a condition of coverage is virtually identical to the policy notice requirement in <u>Continental Casualty</u>, 799 S.W.2d at 884. Moreover, the relevant Missouri cases emphasize that timely reporting of claims to the insurer under a claims made policy is an essential part of the contract. <u>See</u> <u>Insurance Placements</u>, 917 S.W.2d at 597; <u>Continental Casualty</u>, 799 S.W.2d at 886. The University bases its argument for a prejudice requirement on <u>Tuterri's, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.</u>, 894 S.W.2d 266, 269 (Mo. App. 1995), a case that did not involve a claims made policy. We agree with the district court that <u>Continental Casualty</u> is controlling. Therefore, Lexington need not prove prejudice to deny coverage if the University failed to report the McCormick claim within the policy term.

3. Turning to that fact issue, the University argues that it did in fact provide Lexington adequate notice of the McCormick claim before the policy expired. Lexington agreed to accept the University's "loss run" computer printout as a notice of claims first made. This document recorded, tracked, and provided information regarding all claims asserted over a number of years. The McCormick claim was mistakenly listed on the June 28, 1991, loss run as a 1979 claim. Pointing to policy language excusing harmless "inadvertent error" in reporting claim information, the University contends that it simply made a good faith reporting mistake that must be forgiven absent prejudice to Lexington.

The policy language cited by the University relates to errors in reporting claim information after initial notice of the claim has been given. Here, on the other hand, the issue is lack of an initial notice. The June 1991 loss run was a fifteen-page document reporting over 500 incidents. The University reported the McCormick claim in the first section of the loss run, which covered

-4-

years prior to 1987, when the University was solely self-insured.  The second section covered years after 1987, when the University first obtained excess liability coverage.  That section listed claims by the year in which they were first asserted.  We agree with the district court that listing the McCormick claim in the 1979 portion of the loss run reports did not give Lexington notice that a new claim had been made during the 1990-1991 policy period.  Because the University presented no evidence that it reported the McCormick claim to Lexington in any other fashion prior to the end of the policy period, there was no coverage as a matter of law.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.