NORMAN TENOVSKY & another[1] *vs.* ALLIANCE SYNDICATE, INC., & others.[2]

Suffolk. December 4, 1996. - April 9, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance,* Liability insurance, Notice, Insurer's obligation to defend. *Indemnity.*

"Prompt" notice of a claim under a "claims-made" policy of insurance requires notice to the insurer be given during the policy period or no later than sixty days after the expiration of the policy period: where an insured under such a policy failed to give the insurer notice for more than two and one-half years after the insured received the claims and more than a year and one-half after the policy period expired, the insurer had no liability under the policy. [679-681]

CIVIL ACTION commenced in the Superior Court Department on July 19, 1991.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard J. Riley* for Alliance Syndicate, Inc.

*Nancy M. McLean* for the plaintiffs.

O'CONNOR, J. On October 15, 1987, the plaintiff Norman Tenovsky (Tenovsky), while employed by United Steel Erectors, Inc., as an ironworker, was seriously injured at a construction site. He alleges that the negligence of the defendant G & H Steel Services, Inc. (G & H Steel), caused his injuries. G & H Steel was a subcontractor on the job and was insured against personal injury liability by the defendant Alliance Syndicate, Inc. (Alliance).

---

[1] Cecile A. Tenovsky.

[2] G & H Steel Services, Inc.; Liberty Mutual Insurance Company; and Turner Construction Company. This appeal does not involve Liberty Mutual Insurance Company or Turner Construction Company.

Tenovsky and his wife, Cecile A. Tenovsky, brought a tort action alleging personal injuries and loss of consortium against Turner Construction Company, the general contractor at the site of the accident, and G & H Steel. That action is not before us. In the action that is before us, the plaintiffs sought a declaratory judgment in the Superior Court that would establish that Alliance must defend G & H Steel in the plaintiffs' tort action and, subject to the limits of its coverage, must pay the plaintiffs whatever damages the plaintiffs may be awarded in their tort action against G & H Steel.

The plaintiffs and Alliance filed cross motions for summary judgment. Relying principally on *Chas. T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, 406 Mass. 862 (1990), a Superior Court judge concluded that the liability insurance policy issued by Alliance to G & H Steel was a claims-made policy and that G & H Steel's notice to Alliance of the plaintiffs' claims against G & H Steel as a matter of law was too late to entitle G & H Steel to a defense or indemnification, thus defeating the plaintiffs' "reach and apply" claims. The judge denied the plaintiffs' motion for summary judgment and allowed Alliance's cross motion. The following judgment was entered on the docket: "Neither Alliance Insurance Group nor Alliance Syndicate, Inc. has any liability, whether by way of indemnity or otherwise, to any party herein on account of any injury said to have been suffered by Norman Tenovsky on or about Oct. 15, 1987."

The plaintiffs appealed. Reasoning that the insurance policy in this case was materially different from the policy involved in *Chas T. Main, Inc.* v. *Fireman's Fund Ins. Co.*, *supra*, the Appeals Court, 40 Mass. App. Ct. 204 (1996), reversed the judgment in favor of Alliance and ordered that the case be remanded to the Superior Court for further proceedings to be focused in large measure on whether any late notice of claim prejudiced Alliance. See G. L. c. 175, § 112. We granted Alliance's application for further appellate review. We now affirm the judgment entered in the Superior Court.

The significant provisions of the Alliance policy are as follows. Section I, entitled "Coverages," states that coverage is provided "only if a claim for damages because of the 'bodily injury' or 'property damage' is first made against any insured during the policy period. (1) A claim by a person or organization seeking damages will be deemed to have been made

when notice of such claim is received and recorded by any insured or by us, whichever comes first." With regard to the policy's notice requirement, Section IV of the policy, entitled "Commercial General Liability Conditions," provides that, in the event that a claim is made against the insured, the insured must ensure that the insurer receives "prompt written notice" of the claim. That section also requires the insured to "[i]mmediately send [Alliance] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' "

On June 23, 1988 and July 8, 1988, the plaintiffs advised G & H Steel by certified mail of their claims arising out of Tenovsky's injuries sustained on October 15, 1987. As the Appeals Court observes, *id.* at 205, "Alliance does not appear to dispute that the claim letters written by the plaintiffs to G & H Steel in June and July of 1988 were during the policy period and constituted a valid claim under the policy." However, G & H Steel did not forward the plaintiffs' letters to Alliance or notify Alliance in any way of the plaintiffs' claims.

The plaintiffs commenced their tort action against G & H Steel and Turner Construction Company on October 9, 1990. Alliance received copies of the summons and complaint on or about December 17, 1990, which was two and one-half years after G & H Steel received the plaintiffs' claim letters and one and one-half years after the policy period expired. This was Alliance's first notice of the claims.

In this case and in *Chas. T. Main, Inc.*, personal injury claims were first made known to the insured during the policy period but the insurer first received notice of those claims two to three years after the claims were made. The policies in both cases purported to be, and were, claims-made policies. The *Chas. T. Main, Inc.*, policy provided that for coverage, the insurer must receive notice of claim during the policy period or within sixty days after the expiration of the policy. In the present case, the policy requires that the insured, G & H Steel, provide the insurer, Alliance, "prompt written notice" of a claim and "[i]mmediately send [Alliance] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' "

"[F]airness in rate setting is the purpose of a requirement that notice of a claim be given within the policy period or

shortly thereafter," *id.* at 864, and, to that end, a typical claims-made policy "minimize[s] the time between the insured event and the payment." *Id.* at 865. "The closer in time that the insured event and the insurer's payoff are, the more predictable the amount of the payment will be, and the more likely it is that rates will fairly reflect the risks taken by the insurer. . . . If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy period is of the essence in determining whether coverage exists. Prejudice [to the insurer as a result of] an untimely report in [such an] instance is not an appropriate inquiry." *Id.*

Surely, "prompt" notice of "claims made" requires that notice to the insurer be given no later than sixty days following the expiration of the policy period. The policy in this case, then, calling for promptness in notification, is not materially different from the policy considered in *Chas. T. Main, Inc., supra.* Both policies require that the claim, the insured event, be reported to the insurer during the term of the policy or at least promptly after its expiration. It is apparent from the language of the Alliance policy, just as it is apparent from the policy considered in *Chas. T. Main, Inc.,* that the purpose of both policies' notice provision is to produce "fairness in rate setting" by minimizing "the time between the insured event and the payment." This case is controlled by *Chas. T. Main, Inc., supra.* No further determination of prejudice to the insurer need be made. "Prejudice for an untimely report in this instance is not an appropriate inquiry." *Id.* at 865. The judgment entered in the Superior Court is affirmed.

*So ordered.*