The PAINT SHUTTLE, INC. (Illinois), The Paint Shuttle, Inc. (Indiana), Jacqueline Miller and Peter Miller, Appellants–Third–Party Defendants,

v.

CONTINENTAL CASUALTY CO., d/b/a CNA, Appellee–Defendant–Third–Party Claimant,

and

Bosch & Banasiak, Byron E. Bamber, Michael W. Bosch, and Joseph Banasiak, Plaintiffs–Third–Party Defendants.

No. 45A03–9911–CV–420.

Court of Appeals of Indiana.

Aug. 11, 2000.

Mark A. Bates, Schererville, Indiana, Attorney for Appellant.

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

Paint Shuttle Inc. of Illinois, Paint Shuttle Inc. of Indiana, Jacqueline Miller, and Peter Miller (collectively referred to as "Paint Shuttle") appeal the trial court's grant of summary judgment in favor of Continental Casualty Company ("Continental"). We affirm.

### Issue

Paint Shuttle raises the following consolidated and restated issue for our review: whether the trial court properly granted summary judgment in favor of Continental.

### Facts and Procedural History

The facts most favorable to the judgment reveal that Continental issued a professional liability policy (the "malpractice policy") to the law firm of Bosch & Banasiak [1] (the "law firm") for the term of November 29, 1993 through November 29, 1994. The law firm consists of two partners, Michael W. Bosch and Joseph Banasiak, both of whom were listed as insureds on the malpractice policy. The law firm obtained the malpractice policy through

---

1. We note that the law firm is listed as Bamber, Bosch, & Banasiak in the malpractice policy. R. 158. The law firm was originally known by this name when Byron E. Bamber was "of counsel" with the firm. However, the law firm's name changed to Bosch & Banasiak after Bamber retired in 1995. Bamber died shortly after retiring from the practice of law.

Clyde Rector, an insurance broker for the Hammond National Company.

Jacqueline and Peter Miller[2] retained the law firm for assistance in the licensing of the Paint Shuttle business in Illinois and Indiana.[3] On March 23, 1994, Paint Shuttle filed suit against the law firm in Will County, Illinois alleging that the law firm was negligent in the rendering of, or in the failure to render, professional legal services relating to the licensing of the Paint Shuttle business. Subsequently, Paint Shuttle obtained a monetary judgment against the law firm and Bosch.[4]

On October 7, 1996, the law firm filed a declaratory action against Continental and Paint Shuttle for relief under the malpractice policy.[5] In addition, the law firm provided written notice to Continental of the Paint Shuttle malpractice suit. On November 17, 1997, Continental filed an answer, a counterclaim and a third party complaint for declaratory relief under the malpractice policy.[6] Thereafter, on April 23, 1999, Continental filed a motion for summary judgment on the complaint, third party complaint, and counterclaim. The trial court conducted a hearing on the summary judgment motion on September 10, 1999. Thereafter, the trial court granted summary judgment in favor of Continental.

On October 20, 1999, Continental filed a motion to correct error requesting that the trial court amend the trial court's order granting summary judgment in favor of Continental to reflect that the judgment was also entered against third party defendant Martha Highland, as Special Representative of the Estate of Bryon E. Bamber. On February 22, 2000, the trial court granted Continental's motion to correct error. This appeal ensued.

*Discussion and Decision*

I. Standard of Review of Summary Judgment

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bastin v. First Indiana Bank*, 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* When reviewing a grant or denial of summary judgment, this court applies the same standard as does a trial court. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 537 (Ind.1997). Summary judgment should be granted only if the designated evidentiary material shows that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C); *Hoskins v. Sharp*, 629 N.E.2d 1271, 1276 (Ind.Ct.App.1994). On review, we may not search the entire record to support the

---

2. Jacqueline Miller is the officer and sole shareholder of Paint Shuttle. Her husband, Peter Miller, is also an officer of Paint Shuttle.

3. Paint Shuttle is an automotive repair paint business. R. 175.

4. The record does not contain the judgment obtained by Paint Shuttle against the law firm and Bosch in the circuit court located in Will County, Illinois. However, testimony at the summary judgment hearing indicates that the judgment totaled 1.4 million dollars. R. 482.

5. We note that the law firm originally named CNA as the insurer who issued the professional liability policy. After the trial court placed the lawsuit on the Trial Rule 41(E) docket, the law firm filed an amended complaint naming Continental Casualty Company as the insurer

who issued the professional liability policy. R. 19–21. We note that the name "CNA" is on all of the correspondence from the insurance company to the law firm. Thus, for our purposes we will assume that Continental and CNA are the same entity.

6. Continental filed the counter claim against the law firm of Bosch & Banasiak. Continental filed the third party complaint against the law firm of Bamber, Bosch & Banasiak, Michael Bosch, Joseph Banasiak, Bryon E. Bamber, Paint Shuttle, Jacqueline Miller, and Peter Miller. Because Bamber died during the course of the litigation, Martha Highland as Special Representative of the Estate of Bamber, was substituted as a third party defendant.

judgment, but may only consider that evidence which had been specifically designated to the trial court. *North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d 420, 422 (Ind.Ct.App.1995). The party appealing the denial of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was erroneous. *See Warner Trucking, Inc. v. Carolina Cas. Ins. Co.,* 686 N.E.2d 102, 104 (Ind. 1997). We resolve any doubt about a fact or any inference to be drawn from it in favor of the nonmoving party. *Claxton v. Hutton,* 615 N.E.2d 471, 473 (Ind.Ct.App. 1993).

 In summary judgment proceedings, as at trial, the burden of establishing the existence of material affirmative defenses is on the defendant. *Celina Mut. Ins. Co. v. Forister,* 438 N.E.2d 1007, 1009 (Ind.Ct.App.1982). In order to meet this burden, a defendant must show that a genuine issue of material fact exists as to each element of the asserted affirmative defense. *Schrader v. Mississinewa Community Sch. Corp.,* 521 N.E.2d 949, 952–53 (Ind.Ct.App.1988), *trans. denied.* We will affirm a grant of summary judgment if the defendant, in opposition to the plaintiff's summary judgment motion, failed to designate any evidence from which the trial court could infer the elements of the asserted affirmative defense. *Huff v. Langman,* 646 N.E.2d 730, 732 (Ind.Ct.App. 1995).

## II. The Malpractice Policy

### A. Condition Precedent to Insurance Coverage Under the Malpractice Policy

Paint Shuttle contends that the trial court erred in granting Continental's motion for summary judgment because the law firm fulfilled its duty under the malpractice policy of providing Continental with prompt written notice of Paint Shuttle's lawsuit. We disagree.

### 1. Notice Provision

Paint Shuttle argues that the law firm is entitled to coverage under the malpractice policy because the law firm orally informed Continental about Paint Shuttle's malpractice lawsuit against the law firm shortly after it was filed in Will County, Illinois. Continental argues that the law firm is not entitled to coverage under the malpractice policy because it did not submit written notification of the lawsuit to Continental until after the policy lapsed on November 29, 1994.

 We must first determine whether the notice provision contained in the malpractice policy was clear and unambiguous. The malpractice policy contained specific provisions regarding the insured's duty to notify Continental after a loss. The malpractice policy under the title "V. Conditions" provides in pertinent part that:

8. Your Duties

If, during the policy term, or any applicable extended reporting period:

 a. **you** first become aware that a **wrongful act** has been committed, arising out of **your professional services**; and

 b. **you** give written notice to **us** of the:

 (1) specific **wrongful act**,

 (2) the injury or **damage** which has or may result from the **wrongful act**, and

 (3) the circumstances by which **you** first become aware of such **wrongful act**,

 then any subsequent **claim** made against **you** arising out of such **wrongful act** shall be deemed to have been made during the policy term or extended reporting period. No coverage for such **claim** shall exist under any subsequent policy written by **us** to **our** affiliates.

R. 55 (emphasis in original).[7] We believe that the notice provision contained in

---

**7.** "Claim" is defined by the malpractice poli-

cy as "the receipt of a demand for money or

the malpractice policy is clear and unambiguous, and thus, the law firm's duty to provide written notice to Continental of a claim during the policy period is a condition precedent to Continental providing coverage under the malpractice policy for damages arising from a "wrongful act." Because the notice provision is a condition precedent to obtaining coverage under the malpractice policy, we must determine whether the law firm satisfied its duty to provide the insurance company with written notice of claim within the policy period.

 We have held that the notice requirement is "material, and of the essence of the contract." *London Guarantee & Accident Co. v. Siwy*, 35 Ind.App. 340, 66 N.E. 481, 482 (1903). The duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind.Ct.App.1993), *trans. denied.* When the facts of the case are not in dispute, what constitutes proper notice is a question of law for the court to decide. *Id.*

 The specific language of the malpractice policy provides that "you must give written notice to us of the: (1) specific wrongful act; (2) the injury or damage which has or may result from the wrongful act, and (3) the circumstances by which you first became aware of such wrongful act." R. 55. Paint Shuttle filed a malpractice suit against the law firm on March 23, 1994. R. 174–78. Although the law

firm provided Continental with written notice of Paint Shuttle's malpractice lawsuit, we believe that this written notice was untimely.

The malpractice policy provides that a wrongful act "must happen before the end of the policy term stated on the Declarations and claim therefore must first be made against you and reported to us during the policy period." R. 52. The Declarations of the malpractice policy issued by Continental to the law firm was for the policy term of November 29, 1993 to November 29, 1994. R. 294. In addition, the law firm did not renew the malpractice policy with Continental. R. 216. Moreover, the law firm did not provide Continental with written notice of Paint Shuttle's malpractice lawsuit until October 7, 1996, almost two years after the policy's expiration. R. 204. Thus, the law firm failed to provide Continental notice within the time frame proscribed in the malpractice policy.[8]

 In addition, we believe in the present case that the notice was insufficient because the law firm voluntarily undertook the defense of the malpractice suit without allowing Continental to exercise its rights of investigation and defense of a claim under the malpractice policy. Notice is a term of art within the insurance context and sufficient notice by an insured to an insurer involves more than just promptly notifying an insurance company

---

services, naming you and alleging a wrongful act." R. 53. Paint Shuttle's malpractice lawsuit against the law firm clearly constitutes a "claim" under the terms of the policy.

8. Paint Shuttle asserts that the law firm complied with the notice requirements of the malpractice policy because a member of the firm, Bosch, orally informed Rector of Paint Shuttle's malpractice suit several weeks after Paint Shuttle filed suit. Brief of Appellant at 16. Rector is the Vice President of the Hammond National Insurance Company, the insurance broker who serviced the malpractice policy with Continental. R. 325. However, even if Bosch orally informed Rector of the lawsuit, it does not satisfy the *written* notice require-

ments of the malpractice policy. *See* R. 55. Bosch stated in an affidavit that "[w]hile I do not remember the substance of the conversation, I am positive that I told Rector that I had been sued. I do not remember his response or what, if anything, he told me to do." R. 325. The law firm clearly failed to fulfill the condition precedent to obtaining coverage under the malpractice policy. Moreover, the malpractice policy specifically stated that after learning of a claim, an insured "must notify us [Continental] *and* your insurance agent in writing as soon as possible." R. 165. Thus, an insured has a duty to promptly notify in writing both Continental and the insurance agent of the claim.

of a claim. Specifically, we believe that notice also encompasses an insurer's right to promptly investigate a claim or to control the defense of a lawsuit with which it might be subjected to liability as an insurer of an insurance policy.

■ We have previously held that cooperation clause provisions and notice provisions in insurance policies have the same purpose and effect. *Indiana Ins. Co. v. Williams,* 448 N.E.2d 1233, 1237 (Ind.Ct.App.1983). A cooperation clause essentially requires the insured to assist the insurance company in its preparation for settlement or trial. *Motorists Mutual Ins. Co. v. Johnson,* 139 Ind.App. 622, 218 N.E.2d 712, 717 (1966). An insured's responsibilities under the cooperation clause of an insurance policy involve attending hearings and trials, assisting in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. *Indiana Ins. Co.,* 448 N.E.2d at 1237.

■ Similarly, notice provisions require the insured to assist the insurance company by giving it an opportunity to make a timely and adequate investigation during its preparation for settlement or trial. *Motorists,* 218 N.E.2d at 715. Noncompliance with notice provisions and noncompliance with cooperation clause provisions constitute a failure to assist the insurance company in its preparation for settlement or trial. *Indiana Ins. Co.,* 448 N.E.2d at 1237. Therefore, when an insured impedes or prohibits an insurer from investigating or defending a claim, the insured can be found to be in noncompliance with the notice provision of an insurance policy. It follows that if an insured notifies an insurer of a claim, but defends the claim in contravention of an insurance company's rights of investigation and defense, the notice is insufficient for purpose of obtaining coverage under an insurance policy. Thus, for notice to be proper under an insurance policy it must be: · (1) timely as proscribed by the language of the insurance policy; and (2) "true" in the sense that the insured allows the insurer to exercise its rights of investigation and defense of a claim under the policy.

In the present case, although the law firm did immediately inform Continental of the malpractice suit filed against it by Paint Shuttle after it received the complaint and summons sometime around April 1, 1994, it made a strategic decision to attempt to obtain a dismissal of the lawsuit on its own accord without eliciting Continental for assistance. R. 221–222, 327. In fact, Bosch entered his appearance on behalf of the law firm and unsuccessfully attempted to obtain a dismissal of the lawsuit for lack of jurisdiction. R. 221–222. Because the law firm was unsuccessful in obtaining a dismissal of the suit, on October 7, 1996, the law firm requested Continental to defend the malpractice suit. R. 204. On October 18, 1996, Continental informed the law firm that it would not defend the lawsuit because the firm failed to provide sufficient notice of the claim, a condition precedent to obtaining coverage under the policy. R. 205. Approximately ten months later the law firm hired outside counsel to defend the firm from the malpractice suit. R. 222.

We believe that the law firm's voluntary act of defending the suit and not allowing Continental to exercise its right to investigate or defend the claim constitutes insufficient notice under the malpractice policy. Thus, the law firm was in noncompliance with the notice provision of the policy because the notice was untimely and the law firm voluntarily undertook the investigation and defense of the claim in contravention of Continental's rights under the policy.

2. The Malpractice Policy is a "Claims Made" Insurance Policy

■ We believe that the type of policy issued by Continental to the law firm supports our decision that the law firm failed to provide sufficient notice under the malpractice policy Although not addressed in Indiana, other jurisdictions have drawn an

important distinction between "occurrence" insurance policies and "claims made" insurance policies based on each policy's essential purpose. *See, e.g., Home Ins. Co. of Illinois v. Adco Oil Co.,* 154 F.3d 739 (7th Cir.1998), *cert. denied,* 526 U.S. 1017, 119 S.Ct. 1250, 143 L.Ed.2d 348 (1999); *Lexington Ins. Co. v. St. Louis Univ.,* 88 F.3d 632, 634 (8th Cir.1996); *United States v. A.C. Strip,* 868 F.2d 181 (6th Cir.1989); *Tenovsky v. Alliance Syndicate, Inc.,* 424 Mass. 678, 677 N.E.2d 1144 (1997); *Bianco Professional Ass'n v. Home Ins. Co.,* 740 A.2d 1051 (N.H.1999).

■ Conventional liability insurance policies are "occurrence" policies. *National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie,* 997 F.2d 305, 306 (7th Cir.1993). "Occurrence" policies link coverage to the date of the tort rather than of the suit. *Home Ins. Co. of Illinois,* 154 F.3d at 742. Thus, "occurrence" policies protect the policyholder from liability for any act done while the policy is in effect. *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 565 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). A "claims made" policy links coverage to the claim and notice rather than the injury. *Home Ins. Co. of Illinois,* 154 F.3d at 742. Thus, a "claims made" policy protects the holder only against claims made during the life of the policy. *St. Paul Fire & Marine Ins. Co.,* 438 U.S. at 565 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932.[9]

■ Both an "occurrence" and "claims made" insurance policies require the insured to promptly notify the insurer of the possible covered losses. *Lexington Ins. Co.,* 88 F.3d at 634. The notice provision of a "claims made" policy is not simply the part of the insured's duty to cooperate, it defines the limits of the insurer's obligation. *Lexington Ins. Co.,* 88 F.3d at 634. If the insured does not give notice within the contractually required time period, there is simply no coverage under the policy. FDIC, 993 F.2d at 158.

■ In the present case, Continental issued a professional liability policy to the law firm, policy number LPC 3937579, which was effective from November 29, 1993 through November 29, 1994. R. 159–71. The malpractice policy under the title "I. Coverage Agreements" provides in pertinent part that:

A. **We** will pay all amounts, up to **our** limit of liability, which **you** become legally obligated to pay as a result of a wrongful act by you or by any entity for whom **you** are legally liable.[10]

B. The **wrongful act,** as described above, must happen before the end of the policy term stated on the Declarations and **claim** therefore must first be made against **you** and reported to **us** during the policy period. Any **claim** or **claims** arising out of the same or related **wrongful acts,** shall be considered first made during the policy term in which the earliest

---

9. Insurance companies typically charge higher premiums for "occurrence" policies because they are exposed to future indefinite liability. *See National Union Fire Ins. Co. of Pittsburgh,* 997 F.2d at 306. Because of the increased costs of insurance premiums, many consumers have opted for "claims made" policies. Although an insured generally pays a lower premium under a "claims made" policy, the coverage is less than that of an "occurrence" policy because an insurer is not exposed to future indefinite liability. *See National Fire Ins. Co. of Pittsburgh,* 997 F.2d at 306. Insurance companies favor "claims made" policies because such policies allow the insurer to more accurately fix its reserves for future liabilities and compute premiums

with greater certainty. *FDIC v. St. Paul Fire & Marine Ins. Co.,* 993 F.2d 155, 158 (8th Cir.1993).

10. Continental does not contest Paint Shuttle's assertion that the law firm's acts or omissions with regard to the licensing of Paint Shuttle constituted a "wrongful act" under the malpractice policy. Thus, we need not address of whether the law firm committed a "wrongful act" under the malpractice policy. However, we note that the malpractice policy defines "wrongful act" as "any negligent act, error or omission in: the rendering of or failure to render, professional services." R. 53.

**claim** arising out of such **wrongful acts** was made.

. . .

E. **We** have no duty to defend any claim not covered by this Coverage Part.

R. 52 (emphasis in original). The unambiguous language of the malpractice policy clearly limits claims made during the policy period. Thus, the malpractice policy issued by Continental to the law firm was a "claims made" policy.

 We believe that excusing a delay in notice beyond the policy period would alter a basic term of the malpractice policy which is impermissible. *See Esmailzadeh,* 869 F.2d at 424. An insurance policy is a contract between the insurer and the insured. *See Eli Lilly & Co. v.*

*Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind. 1985). Consideration is an essential element of every contract. *Puetz v. Cozmas,* 237 Ind. 500, 147 N.E.2d 227, 231 (1958). "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." *A & S Corp. v. Midwest Commerce Banking Co.,* 525 N.E.2d 1290, 1292 (Ind.Ct.App.1988). In other words, consideration consists of a "bargained for exchange." *Burdsall v. City of Elwood,* 454 N.E.2d 434, 436 (Ind. Ct.App.1983). Because we believe that the extension of notice period in a "claims made" policy would create an unbargained for expansion of coverage, we do not believe that Continental is required to show that it was prejudiced by the untimely delay.[11] Because the law firm failed to

11. We note when an insurance company has denied a claim under an "occurrence" policy because of the insured's failure to provide reasonable notice of a claim, the insurer must show that it was prejudiced by the unreasonable delay. *Miller v. Dilts,* 463 N.E.2d 257, 263 (Ind.1984). The Indiana Supreme Court stated in *Miller* that:

The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify.

*Id.* at 465.

Even though we have determined that Continental was not required to show prejudice as a result of the law firm's untimely notice of Paint Shuttle's malpractice suit because the insurance policy was a "claims made" policy, we believe that Continental has in fact shown such prejudice. Because there was an unreasonable delay in notification, prejudice to Continental's ability to prepare an adequate defense can be presumed. *See Miller,* 463 N.E.2d at 265. The presumption of prejudice essentially means that if the delay in giving the required notice is unreasonable, the injured party or the insured has the burden to

produce evidence that prejudice did not actually occur in the particular situation. *See id.* The record lacks any evidence that Paint Shuttle rebutted the presumption that Continental had suffered prejudice to its right to conduct a timely and adequate investigation of the law firm's claim. *See id.* The Indiana Supreme Court has stated that:

Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put forth their respective positions in the legal arena.

*Id.* at 265–66.

Although Continental may have had notice of the lawsuit before October 7, 1996, the date the law firm submitted written notice to Continental, Continental was under no duty to defend the lawsuit because the formal written notice from the law firm was untimely and not in compliance with the specific provisions of the malpractice policy. In addition, it is apparent that the law firm hired outside counsel, attorney Scott Hoster, to defend the firm at trial. R. 380. Hoster was not an attorney for Continental nor did Continental pay Hoster's legal fees. Although an attorney for Continental, Cory Lund, occasionally monitored portions of the trial, he did not participate in the defense of the law firm. R. 380. Lund's role during the trial was that of a spectator only, viewing a few of the pre-trial hearings and ninety minutes of the trial. *Id.* Therefore, the record lacks sufficient evidence to rebut the presumption of prejudice to Continental as a result of the untimely notice.

satisfy the condition precedent to obtaining coverage under the "claims made" policy, we believe that the law firm is not entitled to coverage under the policy.

### B. "Innocent Partners" Provision

Paint Shuttle contends that even if the law firm did not promptly comply with the written notice provisions of the malpractice policy, the trial court erred in granting summary judgment in favor of Continental because genuine issues of material fact exist with regard to whether members of the law firm were entitled to the "Innocent Partners" provision of the malpractice policy. We disagree.

Continental argues that this issue is waived for our review because the "innocent partnership provision is an affirmative defense that must be specifically pled" and it was not pleaded by any party. Brief of Appellant at 13. Paint Shuttle argues that the "innocent partnership provision is not listed as an affirmative defense [under Indiana Trial Rule 8(C)], and thus, the trial rules do not require that it be specifically pled." Reply Brief of Appellants at 3.

#### 1. The Malpractice Policy Provision is an Affirmative Defense

■■■■■ Our initial inquiry is to determine whether the "Innocent Partners" provision of the malpractice policy constitutes an affirmative defense. Indiana Trial Rule 8(C) lists affirmative defenses that must be raised in responsive pleadings, but this list is not exhaustive. Because the "Innocent Partners" provision of the malpractice policy is not one of the defenses specifically listed in T.R. 8(C), we must decide whether it constitutes an affirmative defense. The determination of whether a defense is affirmative depends upon whether it controverts an element of a plaintiff's prima facie case or raises matters outside the scope of the prima facie case. *Molargik v. West Enterprises, Inc.,*

605 N.E.2d 1197, 1199 (Ind.Ct.App.1993). An affirmative defense is a defense "upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief." *Rice v. Grant County Bd. of Comm'rs,* 472 N.E.2d 213, 214 (Ind.Ct.App.1984), *trans. denied.* The "Innocent Partners" provision of the malpractice policy provides in pertinent part that:

> **We** agree that this policy will apply to any of **you** do not agree to participate in, or remain passive, after learning about the failure to give us notice because of concealment by another who is also defined as you in this policy. All of **you** under this policy must immediately comply, to the extent possible, with all policy provisions upon learning of such concealment.

R. 164 (emphasis in original). "You" is defined in the malpractice policy as:

> A. the **named insured** and any **predecessor firm;**
>
> B. the lawyers named in item 3 on the Declarations;

R. 163 (emphasis in original).[12] The "Innocent Partners" provision allows an insured to obtain coverage under the malpractice policy even though the insured failed to satisfy the written notice requirements of the policy, providing that the insured proves that the claim or "wrongful act" was concealed from him by another. Essentially, the provision converts Continental's denial of an insurance claim based on the failure of an insured to satisfy his duties under the policy. Thus, we believe that the "Innocent Partners" provision of the malpractice policy constitutes an affirmative defense.

#### 2. Waiver

■■■ Because we have determined that the "Innocent Partners" provision is an

---

**12.** We note that the Declarations of the malpractice policy lists Bamber, Bosch, & Banasiak as the named insured under the policy.

R. 158. In addition, Michael W. Bosch and Joseph Banasiak were listed as lawyers under item three of the Declarations. *Id.*

affirmative defense, we must now determine whether the defense is waived for our review. Indiana Trial Rule 8(C) provides that if a responsive pleading is necessary, the party filing the pleading must include within that responsive pleading any affirmative defense it seeks to assert. *Connell v. Connell,* 583 N.E.2d 791, 792 (Ind.Ct. App.1991). Failure to do so results in waiver. *City of Hammond v. Northern Indiana Pub. Serv. Co.,* 506 N.E.2d 49, 51 (Ind.Ct.App.1987), *trans. denied.* Waiver applies even if the affirmative defense is not listed among those defenses set out in Trial Rule 8(C). *United Farm Bureau Mut. Ins. Co. v. Wolfe,* 178 Ind.App. 435, 382 N.E.2d 1018, 1019 (1978).

■ After review of all of the responsive pleadings, it is evident that none of the parties raised the affirmative defense of the "Innocent Partners" provision of the malpractice policy. *See* R. 108–09, 116–18, 120–21. However, Indiana Trial Rule 15(B) provides an escape hatch for a defendant if an affirmative defense has not been pled in responsive pleadings. Trial Rule 15(B) provides in pertinent part that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Thus, if an issue is tried by the implied consent of the parties it is treated as if the issue was raised in the pleadings. *Elkhart County Farm Bureau Co-op. Ass'n, Inc. v, Hochstetler,* 418 N.E.2d 280, 282 (Ind.Ct. App.1981). Therefore, we must examine whether the "Innocent Partners" provision of the malpractice policy was litigated at summary judgment.

■ In the present case, Continental moved for summary judgment. R. 151–54. Thereafter, the law firm filed with the trial court a Memorandum In Support of Response To Motion For Summary Judgment in which it raised the affirmative defense of the "Innocent Partners" provision of the malpractice policy. R. 267–70. Paint Shuttle also filed with the trial court a Memorandum In Response to Motion For Summary judgment in which it raised the affirmative defense of the "Innocent Partners" provision of the malpractice policy. R. 314–24. Moreover, the merits of the affirmative defense of the "Innocent Partners" provision of the malpractice policy was addressed by both Paint Shuttle and Continental at the September 10, 1999 hearing on Continental's motion for summary judgment. *See* R. 473–84, 490–92. Because the affirmative defense of the "Innocent Partners" provision of the malpractice policy was argued extensively during summary judgment, we believe that the defense has not been waived by the parties' failure to raise the affirmative defense in responsive pleadings.

### 3. "Innocent Partners" Provision Inapplicable to Banasiak [13]

■ Paint Shuttle argues that Banasiak is entitled to coverage under the

---

13. We note that Paint Shuttle also contends that Bamber is entitled to the affirmative defense of the "Innocent Partners" provision of

the malpractice policy. However, Paint Shuttle did not designate any evidence nor argue at summary judgment that Bamber was enti-

malpractice policy because he qualifies as an "Innocent Partner" under the policy. Continental argues that "Banasiak is not entitled to coverage because he was specifically aware of the malpractice suit yet acquiesced in Bosch's decision to not report the claim to Continental until after Bosch attempted to obtain a dismissal of the suit for lack of jurisdiction." Brief of Appellee at 13–14. "Banasiak was therefore specifically aware of the existence of the malpractice suit, had the contractual obligation to report the claim, yet remained passive and agreed in his partner's decision to not immediately report the claim ... Banasiak is not innocent." *Id.* at 14.

Paint Shuttle filed the malpractice suit against the law firm on March 23, 1994. R. 174–78. Banasiak stated in an affidavit that "I became aware of the lawsuit filed in the Paint Shuttle matter shortly after said lawsuit was filed." R. 274. Therefore, Banasiak had almost eight months in which to inform Continental of Paint Shuttle's malpractice suit against the law firm. Moreover, Banasiak was listed as a named insured under the malpractice policy and thus, had a duty to provide prompt written notice of the lawsuit to Continental. R. 158.

It is apparent that Banasiak did not promptly notify Continental of Paint Shuttle's malpractice suit because of his reliance on Bosch's assertions. Banasiak stated in his affidavit that:

Bosch appeared in the case and moved to get the case dismissed based on lack of jurisdiction. He had informed me that if that failed, he would turn the matter over to the insurance company and make an appropriate claim.

R. 274. However, we do not believe that Bosch's assertions relieved Banasiak of his duty under the malpractice policy to promptly provide written notice to Continental of Paint Shuttle's lawsuit. In addition, Bosch fulfilled his promise to Banasiak, he attempted to obtain a dismissal of the lawsuit, and when this tactic was unsuccessful the insurance company was notified of the claim.

Moreover, the fact that Banasiak relied upon Bosch assertions that he would take care of the matter does not entitle Banasiak to the affirmative defense of the "Innocent Partners" provision of the malpractice policy. The provision specifically requires that there exist "concealment by another who is also defined as you in this policy" before an individual can invoke the affirmative defense contained in the "Innocent Partners" provision of the malpractice policy. A concealment in the law of insurance implies an intention to withhold or secrete information so that the one entitled to be informed will remain in ignorance. *Indiana Ins. Co. v. Knoll,* 142 Ind.App. 506, 236 N.E.2d 63, 70 (1968). After reviewing the record, we found no evidence of concealment attributed to Bosch. Because Banasiak had knowledge of Paint Shuttle's lawsuit shortly after it was filed and there exists no evidence of concealment of the lawsuit by Bosch, we believe that the "Innocent Partners" provi-

tled to the "Innocent Partners" provision of the malpractice policy. *See* R. 312–24. In response to a properly supported motion for summary judgment, the adverse party may not rest upon the mere allegation of his pleadings, but must designate to the trial court each material issue of fact which the party asserts precludes summary judgment and the relevant evidence pertaining to such issue or issues. T.R. 56(C), (E). In ruling on a summary judgment motion, a trial court must rely upon the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other evidentiary materials designated by the parties pursuant to Trial Rule 56(C). *Parker by Parker v. State Farm Mut. Auto. Ins. Co.,* 630 N.E.2d 567, 569 (Ind.Ct.App.1994), *trans. denied.* Appellate review is similarly limited. *Abbott v. Bates,* 670 N.E.2d 916, 921 (Ind.Ct. App.1996). Thus, we may not reverse a grant of summary judgment on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. T.R. 56(H); *Parker,* 630 N.E.2d at 569. Therefore, we decline to address this issue.

sion of the malpractice policy is inapplicable to Banasiak.

*Conclusion*

Based on the foregoing, we hold that the trial court properly granted summary judgment in favor of Continental.

Affirmed.

SHARPNACK, C.J., and BAKER, J., concur.