Jerry and Becky **FRENCH,**
Appellants–Plaintiffs,

v.

**STATE FARM FIRE & CASUALTY COMPANY, Appellee–Defendant.**

**No. 18A02–1005–PL–489.**

Court of Appeals of Indiana.

May 26, 2011.

See also 881 N.E.2d 1031.

George M. Plews, Todd J. Janzen, Plews Shadley Racher & Braun LLP, Indianapolis, IN, Attorneys for Appellants.

Karl L. Mulvaney, Bingham McHale LLP, Dennis F. Cantrell, Barbara A. Jones, Tara Stapleton Lutes, Cantrell Strenski & Mehringer, LLP, Indianapolis, IN, Attorneys for Appellee State Farm Fire & Casualty Company.

## OPINION

BRADFORD, Judge.

Appellants–Plaintiffs Jerry and Becky French and Appellee–Defendant State Farm Fire & Casualty Company both appeal from the denial of their motions for summary judgment. State Farm argues that its offer to pay for another manufactured home after the Frenches' burned fulfilled its obligation under a homeowners' policy to pay the "reasonable and necessary cost" of replacing the Frenches' home with one of "similar construction." State Farm also argues that it is entitled to rescind the policy because Jerry failed to disclose both the purchase price of the original home and that it was a manufactured home. The Frenches assert that their stick-built home constitutes "similar construction" under the policy and that they are entitled to reimbursement up to the policy limits. The Frenches also assert that State Farm is not entitled to rescind the policy because its insurance agent failed to ask about the purchase price of their original home. Additionally, the Frenches assert that they are entitled to attorneys' fees and prejudgment interest. We affirm in part, reverse in part, and remand with instructions.

### Facts and Procedural History

Many of the relevant facts are undisputed. Because both parties are appealing from the trial court's denial of their respective motions for summary judgment, however, we will mention any factual disputes where appropriate. On January 11, 2002, Jerry French entered into a purchase agreement with Delaware County Mobile Home Sales to purchase a manufactured home for $76,950.00. Jerry contacted Jane Hodson, an independent insurance agent, about arranging insurance on the home.

Jerry and Hodson met a few days later, and Hodson asked him at least thirty-seven questions about his new home, the answers to which she entered into the Insurance–to–Value calculator ("the IV calculator"). During the IV calculator process, it is undisputed that Hodson did not ask Jerry if the home he wished to insure was a manufactured home or how much the home cost and that Jerry truthfully answered all of the questions put to him. According to Jerry, he told Hodson that the home was a manufactured home. According to Hodson, Jerry never told her that the home was a manufactured home,

but that it was "under construction[,]" from which she inferred that it was a stick-built home. Appellant's App. p. 338. Based on Jerry's responses to Hodson's questions, the IV calculator indicated that the total replacement cost for the Frenches' home was $173,200.00.

Jerry signed the policy application, which stated that he was "responsible for selecting the appropriate amount of coverage[.]" Appellant's App. p. 366. On July 9, 2002, State Farm issued a homeowners' policy with dwelling coverage limits of $173,200 and an increased dwelling limit endorsement of $34,640, which provided in part that State Farm would "pay up to the applicable limit of liability ... the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises ... the damaged part of the property." Appellant's App. p. 187. On February 12, 2003, the Frenches' home was substantially destroyed by a fire, the cause of which has never been determined.

The day after the fire, a State Farm adjuster went to the site and learned that the Frenches' home was a manufactured home. The adjuster told the Frenches that they could use an amount up to the policy limits to rebuild their home and sent them a letter stating that they could choose a contractor to perform the repairs. The Frenches were reluctant to purchase another manufactured home and expressed their desire to construct a "stick-built" home on the existing foundation. On March 14, 2003, State Farm offered to pay the Frenches the cost of replacing their manufactured home with the same model, which totaled $82,483.50. The Frenches accepted this amount but reserved the right to seek additional coverage under the policy. The Frenches' stick-built home cost over $180,000.

The Frenches sued State Farm in United States District Court for breach of insurance policy and Hodson for negligent failure to advise and to procure insurance. On November 29, 2004, the case was transferred to Delaware Circuit Court. All parties filed motions for summary judgment. On November 1, 2006, the trial court denied the Frenches' and State Farm's motions against each other and granted summary judgment for Hodson, which this Court affirmed in March 2008. The Frenches and State Farm renewed their motions for summary judgment, both of which the trial court again denied on March 2, 2010. On March 31, 2010, the Frenches moved to certify an interlocutory appeal, which motion the trial court granted on April 12, 2010. On June 22, 2010, this court accepted jurisdiction.

**Discussion**

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.*

**I. Policy Interpretation**

State Farm argues that its offer to pay for another manufactured home after

the Frenches' burned fulfilled its obligation under the homeowners' policy to pay the "reasonable and necessary cost" of replacing the Frenches' home with one of "similar construction." [1] For their part, the Frenches assert that their stick-built home constitutes "similar construction" under the policy and that they are entitled to reimbursement up to the policy limits. Essentially, the resolution of this issue depends upon whether the contractual terms "reasonable and necessary" and "similar construction" allow the Frenches to be compensated for a stick-built home of similar size that nonetheless cost over twice as much as the original manufactured home.

[B]ecause the interpretation of a contract is a matter of law, cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment.

Moreover, provisions of insurance contracts are subject to the same rules of construction as other contracts. We interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. In accomplishing that goal we must construe the insurance policy as a whole, rather than considering individual words, phrases, or paragraphs. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning.

Additionally, we must accept an interpretation of the contract language that harmonizes the provision rather than one which supports a conflicting version of the provisions. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. If reasonably intelligent persons honestly may differ as to the meaning of the policy language, the policy is ambiguous. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language.

*Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 692–93 (Ind.Ct.App.2002) (citations omitted).

Contracts for insurance are subject to the same rules of interpretation and construction as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467; *Sharp v. Indiana Union Mut. Ins. Co.* (1988), Ind.App., 526 N.E.2d 237, *trans. denied.* Whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Kutche Chevrolet, Inc. v. Anderson Banking Co.* (1992), Ind. App., 597 N.E.2d 1307. Generally, construction of a written contract is a question of law for the trial court and therefore summary judgment is particularly appropriate. *Id.* However, if reasonable

1. The Frenches cite to cases standing for the proposition that replacement-cost policies (as opposed to actual-cash-value policies) allow for payments even if such payments result in what is arguably a windfall. *See Travelers Indem. v. Armstrong*, 442 N.E.2d 349 (Ind. 1982); *Rockford Mut. Ins. v. Pirtle*, 911 N.E.2d 60 (Ind.Ct.App.2009), *trans. denied;* and *Nahmias Realty Inc. v. Cohen*, 484 N.E.2d 617 (Ind.Ct.App.1985), *trans. denied.* These cases, however, are inapposite. To the extent that the Frenches rely on these cases, their argument is premised on the idea that State Farm is essentially attempting to treat the Frenches' replacement-cost policy as an actual-cash-value policy. State Farm does not dispute that the policy obligates it to pay replacement cost nor does it argue that its obligation is limited by the actual cash value of the manufactured home. Rather, State Farm maintains that its obligation is limited to the cost of a new manufactured home because that is the reasonable and necessary replacement cost.

minds differ as to the meaning of the contract's terms, then an ambiguity exists rendering summary judgment inappropriate. *Id.*

*Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 354 (Ind.Ct.App.1995), *trans. denied.* As a general rule, "[w]here provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity." *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind.1998).

As previously mentioned, the policy provided in part that, in the event of a loss, State Farm would "pay up to the applicable limit of liability ... the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises ... the damaged part of the property." Appellant's App. p. 187. The resolution of this issue requires investigating the meanings of the phrases "similar construction" and "reasonable and necessary cost." The Frenches argue mainly that their new stick-built home is of "similar construction" to the old one. State Farm argues that the new home is not of "similar construction" and that, even if it were, the cost to build it was not "reasonable and necessary."

### A. "Similar Construction"

■ The Frenches point to the many similarities between their new stick-built home and their burned manufactured home, arguing that the similarities in size, layout, building materials used, etc., render the new home of "similar construction" to the old. The term "similar construction" is not defined in the policy, but "similar" may be defined as "having characteristics in common" or "very much alike[.]" Webster's Third New International Dictionary 2120 (Phillip Babcock Gove et al. eds., G. & C. Merriam Company 1964).

Construction may be defined as "the form or manner in which something has been put together[.]" *Id.* at 489.

We conclude that the phrase "similar construction" is ambiguous. The Frenches focus on similarities in size, materials, and layout, while State Farm focuses on the facts that a manufactured home is built in a factory, to different code requirements, and allegedly has a relatively short estimated useful life. Both parties' views are correct, as far as their arguments go, but ultimately incomplete. It is apparent that "construction" is a broad concept that encompasses myriad considerations, including, but not limited to, building techniques, building materials (including the quality of those materials), size, layout, craftsmanship, design, and useful life, among others. We do not wish the above to be read as an exhaustive list of factors to be considered in such cases. We wish merely to emphasize that such determinations will be fact-sensitive, with the above factors (or others) being more important, less important, or irrelevant, depending on the particular facts of the case.

### B. "Reasonable and Necessary Cost"

■ State Farm argues that, even if the new home is of "similar construction" to the old, the cost to build it was not "reasonable and necessary" under the terms of the policy, with their argument regarding this language focusing on "necessary." State Farm argues essentially that only the absolute minimum cost needed to replace the Frenches' home is a "necessary" cost under the policy. "Necessary" may be defined as "whatever is essential for some purpose[.]" *Id.* at 1510. While we might be inclined to agree that State Farm would only be obligated to pay the bare minimum replacement cost if the policy had specified "necessary cost," it did not; State Farm's argument fails to take into account that the cost must also be "reason-

able." "Reasonable" may be defined as "not absurd[,] not ridiculous[,] remaining within the bounds of reason[, or] not extreme[.]" *Id.* at 1892. State Farm does not argue that the word "reasonable" is not ambiguous, and it seems fairly clear that reasonable persons could come to different conclusions regarding what is a "reasonable" cost. Consequently, as with the term "similar construction," we conclude that "reasonable and necessary cost" is ambiguous and open to different interpretations. The trial court properly denied both parties' motions for summary judgment on the question of whether the policy terms covered the cost of replacing the Frenches' manufactured home with a stick-built one. *See Plumlee,* 655 N.E.2d at 354.

## II. Coverage by Estoppel

■ The Frenches contend in the alternative that State Farm is estopped from denying coverage because undisputed designated evidence establishes that it made misrepresentations to them which induced them to purchase coverage that did not cover the disputed risk. "Indiana adheres to the general rule that the doctrine of estoppel is not available to create or extend the scope of coverage of an insurance contract." *Emp'rs Ins. of Wausau v. Recticel Foam Corp.,* 716 N.E.2d 1015, 1028 (Ind.Ct.App.1999). "The rationale for the rule is that an insurance company should not be forced to pay the loss for which it has not charged a premium." *Id.* One exception to this general rule, however, is made "when an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk." *Id.* For example, the Indiana Supreme Court has applied this exception to estop an insurer from denying coverage pursuant to a vacancy provision of an insurance contract where the insurer knew

the insured's building was vacant at the time the coverage was purchased. *See Huff v. Travelers Indem. Co.,* 266 Ind. 414, 426–27, 363 N.E.2d 985, 992 (1977).

State Farm contends that the coverage-by-estoppel exception does not apply in this case, as there is no dispute that coverage exists—only a dispute concerning the amount. We agree. State Farm has never denied coverage for the Frenches' fire loss; it only disputes that it is obligated to reimburse them for a new stick-built home. In other words, we do not have the required "disputed risk," only a disputed amount. *See Emp'rs Ins. of Wausau,* 716 N.E.2d at 1028. We remand with instructions to enter summary judgment in favor of State Farm on the Frenches' coverage-by-estoppel claim.

## III. Reformation or Rescission

State Farm contends that designated evidence could support a finding that it is entitled to (1) reformation of the policy based on a mutual mistake of fact and (2) rescission of the policy based on concealment of material facts by the Frenches.

### A. Mutual Mistake of Fact

■ For purposes of rescission, a mutual mistake exists "where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false." *Jackson v. Blanchard,* 601 N.E.2d 411, 416 (Ind.Ct.App.1992). It is not enough that both parties are mistaken about any fact; rather, the mistaken fact complained of must be one that is of the essence of the agreement and must be such that it animates and controls the conduct of the parties. *Id.* at 416. In *Martin Bros. Box Co. v. Orem,* 117 Ind. App. 110, 69 N.E.2d 605, 606 (1946), it was observed that

[M]utual assent is necessary to the formation of every contract, and

where there is any mistake of the contracting parties by which one of them has in mind one thing as the subject matter of the contract and the other party has in mind something entirely different, and the terms of the contract are such that it will mean either the one or the other, there is no meeting of the minds, and therefore no contract.

*Am. United Life Ins. Co. v. Rest. Hospitality Ass'n of Ind.*, 898 N.E.2d 419, 425–26 (Ind.Ct.App.2008). The designated evidence does not generate a genuine issue of fact regarding a mutual mistake of fact. Although there is evidence that Hodson and State Farm were mistaken regarding the true value or nature of the manufactured home, there is no evidence that the Frenches were. We remand with instructions to enter summary judgment in favor of the Frenches on this question.

## B. Concealment

State Farm contends that it is entitled to trial on the question of whether it may rescind the insurance contract entirely based on the Frenches' concealment of the purchase price of the manufactured home or the fact that it was manufactured home. As an initial matter, the Frenches contend that State Farm cannot rescind the contract under any circumstances because it has failed to make a tender of premiums.

The function of contract rescission is to restore the parties to their pre-contract position, that is, the status quo. *Gary National Bank v. Crown Life Ins. Co.* (1979), Ind.App., 181 Ind.App. 610, 392 N.E.2d 1180. It is therefore basic that a party seeking rescission must return all consideration or benefits received under the contract. *Smeekens v. Bertrand* (1974), 262 Ind. 50, 311 N.E.2d 431; *Blaising v. Mills* (1978), Ind.App., 176 Ind.App. 141, 374 N.E.2d 1166; *Ber-*

*ry–Jefferson Corporation v. Gross* (1977), Ind.App., 171 Ind.App. 653, 358 N.E.2d 757.

This means that when an insurance company seeks to rescind a policy on the grounds of a material misrepresentation in an application, generally it must first make a tender of the full amount of premiums paid under the policy. This is to restore the parties to the position they were in prior to the contract by returning the consideration the insurance company has received. *Prudential Ins. Co. v. Smith* (1952), 231 Ind. 403, 108 N.E.2d 61; *Gary National Bank v. Crown Life Insurance Company, supra.*

Although infrequent, there is an exception to this rule. It is conveniently summarized in 6 Couch on Insurance (2d ed.1961) s 34:35 at 779:

> Notwithstanding the general rule that, in order to avoid liability on a policy there must be a prompt tender of premiums, such a tender is not necessary where ... the insurer has paid a claim thereon which is greater in amount than the premiums paid.

*See also Appleman, Insurance Law & Practice* (Burdal Ed.1979) s 1832.

*Am. Std. Ins. Co. v. Durham*, 403 N.E.2d 879, 881 (Ind.Ct.App.1980). We conclude that State Farm's failure to make a tender of premiums will not act as a bar to its rescission claim. The designated evidence indicates that State Farm has paid the Frenches a total of $261,155.01 related to the loss. The designated evidence also indicates that the Frenches' yearly homeowners' insurance premium was $438.00, of which they had apparently only paid one annual payment at the time of the fire. State Farm has already paid out far more than the premiums paid, so its failure to make a tender of them does not bar its rescission claim.

Turning to the merits, State Farm has designated evidence that Jerry never told Hodson that the home was manufactured or what it cost but did tell her that it was under construction. As previously mentioned, it is undisputed that no attempt to elicit information regarding cost or mode of construction was made during the application process and that Jerry truthfully answered all of Hodson's questions.

As a general rule,

> [a]n insurer may cancel a policy if representations in an application are (1) false; and (2) material to the risk involved. *Prudential Insurance Co. of America v. Winans* (1975), 263 Ind. 111, 325 N.E.2d 204, 206. The determination of whether the misrepresentation, intentional or innocent, is material is a question for the trier of fact unless the evidence is such that there can be no reasonable difference of opinion. *Id.* A representation is "material" if the fact omitted or misstated, if truly stated, might reasonably have influenced the insurer in deciding whether to reject or accept the risk or charge a higher premium. *Bush v. Washington National Ins. Co.* (1989), Ind.App., 534 N.E.2d 1139, 1142, *transfer denied.* Like any other contract, an insurance contract may be avoided by false representations which mislead, regardless of whether the representation was innocently made or made with a fraudulent intent. *Id.*

*Watson v. Golden Rule Ins. Co.*, 564 N.E.2d 302, 304 (Ind.Ct.App.1990). "It is essential for recovery that the insurer must have been deceived by the misrepresentations and he must have acted in reliance upon them." *State Farm Mut. Auto. Ins. Co. v. Price*, 181 Ind.App. 258, 260, 396 N.E.2d 134, 136 (Ind.Ct.App.1979).

As previously mentioned, Hodson testified that Jerry told her that the home was "under construction[,]" from which she testified that she inferred that it was of stick-built construction. Appellant's App. p. 338. Even assuming, as we must, that Jerry made the above statement, we conclude that it does not rise to the level of a potential misrepresentation regarding the nature of his home. We find it most significant that Hodson's deposition testimony does not indicate that Jerry told her the home was under construction at any particular location, much less on site. Manufactured homes must be constructed, after all, and Jerry's alleged statement, without mention of a location, is just as consistent with a manufactured home as with a stick-built one.

At most, then, the situation was one of concealment or failure to disclose the value or true nature of the home. There are, of course, sins of omission as well as of commission, although no Indiana case has squarely addressed the question of whether failure to disclose a material fact leads to the same result as a misrepresentation. Several foreign cases have addressed the question of whether failure to disclose information regarding the value of insured property operates to relieve the insurer of liability, and, at least when limited to cases involving real estate, the cases uniformly hold that concealment or failure to disclose true value will not allow rescission on that basis.

In *Gamel v. Continental Ins. Co.*, 463 S.W.2d 590 (Mo.Ct.App.1971), where an insured purchased a one-family dwelling for $800 but insured it in the amount of $10,000, the court held that the insurer could not void the policy on the grounds of fraud with regard to the value of the property. *Id.* at 595. In so doing, the court observed that

> Plaintiff went to defendant's agent, gave him a description of the property, and told him the amount of insurance de-

sired. Although it had the opportunity, defendant never raised any question about the amount of insurance requested, made no inspection of the property, never attempted to make any with plaintiff, never requested any be made, and never discussed lowering the amount of coverage. Defendant issued its policy immediately upon payment of the premium and raised the point of value for the first time after the property was destroyed and a total loss some five months and eleven days later. Defendant does not now contend that there was any depreciation. It is obvious the parties were adversary, that they dealt at arm's length with each other, and that there is nothing appearing in this record from which one could conclude that they were not on an equal footing with respect to the opportunity to determine the value of these premises. Under such circumstances the statement of the owner as to the amount of insurance he desired is a mere expression of opinion and, as a matter of law, cannot furnish the basis for the defense of fraud. It follows that the defense which the defendant seeks to present is, as a matter of law, of no assistance to it.

*Id.*

In *Farm Bureau Insurance Co. v. Parks*, 266 Ark. 454, 585 S.W.2d 936 (Ark. 1979), the court held that misrepresentation would not void the insurance policy, even though the dwelling was insured for $45,000 and worth only $20,500. *Id.* at 938. The court identified the following circumstances as relevant:

Appellee purchased a dwelling house and ten lots for $23,000. He financed the purchase with a loan in the amount of $25,000 from a Savings and Loan Association. At the request of the Association, a realtor appraised the property and assigned a total value of $33,500, $20,500 for the house and $13,000 for the land. The Association also required insurance coverage. Appellee's fraudulent misrepresentation allegedly occurred in a telephone conversation between appellee and appellant's local agent, which resulted in the issuance of a policy for $45,000 coverage. The agent asked the appellee how much insurance he wanted and the appraised value of the house. Appellee stated the $33,500 figure and discussed the proposed remodeling. The agent asked the approximate cost of replacing the house and "(a)ll the remodeling you're doing and everything." The agent suggested a figure of $45,000 to which the appellee agreed. It is undisputed that the appellee did not receive a copy of the appraisal and was informed only as to the total fair market value of $33,500. Although the appraiser testified that this appraisal included the increased value that would result from the completion of the remodeling, it is uncontradicted that appellee was not informed as to whether or not the value of the improvements planned and being made was included. Appellee testified that he assumed that the appraisal figure applied only to the dwelling and did not include the enhanced value.

It is also undisputed that the application form asked for coverage of only $40,000. Appellant's agent, however, submitted an application requesting coverage for $45,000. It contained a statement that appellant's agent had inspected the dwelling and recommended acceptance of the risk.

*Id.*

In *Bardwell v. Conway Mutual Fire Insurance Co.*, 122 Mass. 90 (1877), the court refused to void the policy even though the insured did not provide a value for the property when the application requested it. *Id.* at 94. The court reasoned

that "[h]aving entered into the contract without regard to the value of the property insured, leaving that, in case of loss, to be afterwards determined, it cannot now insist that this statement was material." *Id.*

In contrast, in personal property cases, courts have uniformly held that failure to disclose the value of the insured property *is* grounds for voiding the policy. In *Merchants Fire Assurance Corp. v. Lattimore*, 263 F.2d 232 (9th Cir.1959) (applying a California statute), the court held that the trial court committed reversible error in granting judgment to the insured in the amount of $9,950 for loss of unscheduled personal property covered by a personal property floater provision of the policy, because the insured failed to disclose that, in addition to the property declared in the application, she owned unscheduled personal property of the approximate value of $27,000. *Id.* at 242.

Where an insured obtained insurance coverage on art objects in the appraised amount of $275,800, without disclosing that the purchase price of such objects was only $19,800, and that the seller of such objects and the appraiser were one and the same person, the court held in *Stone v. Those Certain Underwrites at Lloyds, etc.*, 81 Ill.App.3d 333, 36 Ill.Dec. 781, 401 N.E.2d 622 (Ill.Ct.App.1980), that such nondisclosure constituted misrepresentation that materially affected the insurer's risk and furnished grounds for rescission of the insurance coverage. *Id.* at 626. The court relied in part upon a provision in the application that asked the applicant whether there was any other material fact "within his knowledge" regarding the application, to which the applicant had answered "no." *Id.*

We find the reasoning of the real estate cases to be persuasive and so adopt the seemingly unanimous position that failure to disclose true value in a real estate insurance context will not give rise to a rescission claim. Some of the real estate cases cited above specifically note that the insurance company did not inspect the property in question before issuing coverage, as was the case here. This strikes us as a valid point, and one on which the real estate cases can be readily distinguished from the personal property cases that reach opposite conclusions. Here, for example, it would have been a simple matter for a State Farm agent to visit the Frenches' home, at which point it would have been immediately apparent that it was a manufactured home, even without going inside. In contrast, the true value of personal property, such as an art collection, would be much more difficult for the insurer to ascertain. Moreover, both of the personal property cases cited above contain additional circumstances that further distinguish them from this case. The *Lattimore* court relied in large part on a California statute that has no Indiana equivalent, and the *Stone* court relied heavily on a provision in the insurance application that required the applicant to provide any other material facts within his knowledge, neither of which applies here. We conclude that even if Jerry concealed or failed to disclose the true value or nature of his manufactured home, such does not give rise to a claim of rescission by State Farm. We do not think it is an unreasonable rule that insurance companies fail to ascertain the true value of insured real property at their peril, as they are in a far better position to accurately ascertain that value than most homeowners. We remand with instructions to enter summary judgment in favor of the Frenches on this claim.

### IV. Attorneys' Fees

The Frenches request this court to award them attorneys' fees. Indiana

Code section 34–52–1–1(b) (2001) provides that

> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) litigated the action in bad faith.

[A] claim or defense is "frivolous" (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.

*Kahn v. Cundiff,* 533 N.E.2d 164, 170 (Ind. Ct.App.1989) *summarily aff'd,* 543 N.E.2d 627 (Ind.1989).

We conclude that this issue is not yet ripe for appellate review. At the very least, neither party has yet prevailed, which the statute requires. "A prevailing party' is defined as a party who successfully prosecutes his claim or asserts his defense." *Allstate Ins. Co. v. Axsom,* 696 N.E.2d 482, 486 (Ind.Ct.App.1998), *trans. denied.*

Nonetheless, we have little trouble concluding as a matter of law that State Farm's defense in this case has not been frivolous. "A claim or defense is "frivolous" (a) if it is made primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer does not make a good faith and rational argument on the merits of the action, or (c) if the

lawyer does not support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law." *Wolfe v. Eagle Ridge Holding Co., LLC,* 869 N.E.2d 521, 530 (Ind.Ct. App.2007). There is absolutely no indication in the record that State Farm asserted any defense for the purpose of harassment or injury, and State Farm's claims in this case, although not all successful, have been rational and well supported by citation to authority and argument. We conclude that the Frenches are not entitled to attorney's fees as a matter of law.

### V. Prejudgment Interest

 The Frenches contend that they are entitled to prejudgment interest on the additional amount they contend that State Farm should have paid them by December 15, 2003, or $106,753.26.

Once the trier of fact determines that a party is liable for damages, "prejudgment interest is proper only where a simple mathematical computation is required." [*Dale* ] *Bland Trucking* [*, Inc. v. Kiger* ], 598 N.E.2d [1103,] 1106 [ (Ind.Ct.App.1992), *trans. denied* ]. An award of prejudgment interest rests on a factual determination, and we may only consider the evidence most favorable to the appellee. *Harlan Sprague Dawley v. S.E. Lab Group,* 644 N.E.2d 615, 617 (Ind.Ct.App.1994).

In addition, an award of prejudgment interest is justified only where there has been an unreasonable delay in payment of an ascertainable amount. *See id.; Holland v. Miami Systems, Inc.,* 624 N.E.2d 478, 481 (Ind.Ct.App.1993), *trans. denied; Northern Indiana Public Service Co. v. Stokes,* 595 N.E.2d 275, 279 (Ind.Ct.App.1992); *Gibson–Lewis Corp. v. Northern Indiana Public Service Co.,* 524 N.E.2d 1316, 1319 (Ind.Ct. App.1988), *reh'g denied, trans. denied.* The "ascertainable" amount refers to

the amount of damages rather than the liability for those damages. *City of Indianapolis v. Twin Lakes Enterprises,* 568 N.E.2d 1073, 1087 (Ind.Ct.App. 1991), *reh'g denied, trans. denied.* Thus, where a good faith dispute exists concerning a portion of a claim, interest should be "limited to the undisputed (ascertainable) portion of the claim." *Stokes,* 595 N.E.2d at 279.

*Oil Supply Co., Inc. v. Hires Parts Serv., Inc.,* 670 N.E.2d 86, 94 (Ind.Ct.App.1996) *transfer granted, opinion vacated sub nom. Oil Supply Co. v. Hires Parts Serv., Inc.,* 683 N.E.2d 592 (Ind.1997) *and aff'd in relevant part, vacated in part,* 726 N.E.2d 246, 250 n. 3 (Ind.2000).

The issue of the award of prejudgment interest is not yet ripe for appellate review. In order for this court to address such a claim, there must be a judgment in favor of one party or another and a factual determination that the award of such fees is, or is not, warranted. Neither of these has occurred yet, leaving this court with nothing to review.

## VI. Additional Living Expenses Pursuant to Coverage C, Mortgage Fees, and Builder's Risk Insurance

The Frenches contend that they are entitled to an additional $2495.41 in living expenses accrued between October 2003, and December 15, 2003, when they were able to occupy their stick-built home. In Coverage C, the policy provides that State Farm will cover necessary increases in costs incurred by the Frenches to maintain their standard of living following the loss. State Farm's payment under Coverage C, however, is limited to the shortest of "(a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months." Appellant's App. p. 194. State Farm argues that it has fulfilled its obligations under Coverage C because a new manufactured home could have been installed on the site by October 17, 2003, the date after which they stopped paying additional living expenses.

It is clear that this issue's disposition depends entirely on whether State Farm is ultimately determined to be liable for the cost of the stick-built home under the Frenches' claim of contractual liability. If the Frenches win on that claim, we conclude that the jury would be permitted to find that they are entitled to additional funds pursuant to Coverage C.

Additionally, among the damages the Frenches seek are fees related to obtaining a new mortgage loan in the amount of $1510.00 and builder's risk insurance in the amount of $1707.51. State Farm correctly points out that such items are not mentioned in the policy. As with the additional living expenses, we have little trouble concluding that these expenditures could be found to be reasonable and necessary costs related to the building of the stick-built home if State Farm is ultimately determined to be liable for that cost. The Frenches should be permitted to argue that the additional living expenses, mortgage fees, and builder's risk insurance were reasonable and necessary costs of replacing their original home with one of similar construction.

### Conclusion

We affirm the trial court to the extent that it denied the parties' motions for summary judgment on the Frenches' contract claim and remand for trial on whether State Farm should be liable for the cost of their stick-built home as a reasonable and necessary cost to replace their manufactured home with one of similar construction. At trial, the Frenches may argue that additional living expenses pursuant to Coverage C, mortgage fees, and builder's risk insurance were reasonable and necessary costs of replacing their original home

with one of similar construction. We remand with instructions to enter summary judgment in favor of State Farm on the question of whether they are estopped from denying coverage to the Frenches and in favor of the Frenches on the question of whether State Farm may rescind the policy due to the Frenches' concealment or failure to disclose the true value of the manufactured home. Finally, we conclude as a matter of law that the Frenches are not entitled to attorney's fees and decline to address the Frenches' claim that they are entitled to the awards of prejudgment interest as it is not yet ripe for appellate review.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and CRONE, J., concur.