

ATTORNEY FOR APPELLANT

Philip E. Kalamaros
Hunt Suedhoff Kalamaros, LLP
St. Joseph, Michigan

ATTORNEYS FOR APPELLEES

Richard P. Samek
Larry L. Barnard
Carson Boxberger, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

The Bar Plan Mutual Insurance Company,

*Appellant-Defendant,*

v.

Likes Law Office, LLC; Kevin L. Likes; Rickey D. Whitaker; and Cheryl L. Whitaker,

*Appellees-Plaintiffs.*

October 15, 2015

Court of Appeals Case No. 02A03-1502-CT-65

Appeal from the Allen Superior Court

The Honorable Nancy Eshcoff Boyer

Trial Court Cause No. 02D01-1211-CT-532

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Third-Party Defendant and Counter/Cross-Claimant, The Bar Plan Mutual Insurance Company (Bar Plan), appeals the trial court's summary judgment in favor of Appellees-Third-Party Plaintiffs and Counter/Cross-Defendants, Likes Law Office, LLC; Kevin L. Likes, Esq. (Likes) and Rickey D. and Cheryl L. Whitaker (Whitaker), concluding that Likes made no material misrepresentation in his application for an insurance policy issued by the Bar Plan and was therefore entitled to coverage under the Bar Plan's policy.

We reverse.

## ISSUES

The Bar Plan raises three issues on appeal, two of which we find dispositive and which we restate as follows:

(1) Whether the trial court properly concluded that the designated and undisputed evidence established that Likes did not make a material misrepresentation in his 2011 application for renewal of his insurance policy; and

(2) Whether the trial court abused its discretion in denying, in part, the Bar Plan's motion to strike Likes' expert testimony as to the custom and practice in the Professional Liability Insurance and Underwriting Industry.

## FACTS AND PROCEDURAL HISTORY

[4] On December 19, 2008, Whitaker filed suit against Travis Becker (Becker), seeking to recover damages for personal injuries. Whitaker alleged that on December 21, 2006, Becker was driving negligently, and rear-ended his vehicle as a result. On January 19, 2009, Becker's counsel sent Likes, Whitaker's counsel, a set of interrogatories and a request for production of documents and informed Likes that, pursuant to Indiana Trial Rule 33, a response was required by February 23, 2009. Likes neither responded nor requested an extension of time.

[5] On three separate occasions, April 14, April 29, and May 12, 2009, Becker's counsel wrote to Likes, reminding him that his client's responses were overdue. The third letter implicitly warned Likes that Becker would involve the trial court if no response was received. Likes did not respond to any of these three letters.

[6] On May 27, 2009, Becker filed a motion to compel discovery. The trial court granted the motion on June 1, 2009, ordering Likes to respond to Becker's discovery requests by June 16, 2009. On June 15, 2009, the day before the trial court's deadline, Likes finally served his client's sworn responses. On November 30, 2009, Becker filed a request for sanctions, claiming that dismissal of the cause was in order as Likes had provided false and misleading answers to the interrogatories and deliberately concealed certain evidence. Likes did not respond. After a hearing, the trial court granted Becker's motion, finding that Likes had supplied deceptive interrogatory answers and had done so in bad faith. Whitaker appealed. On March 29, 2011, we reversed the trial court and

Becker pursued transfer to the supreme court on April 28, 2011. Likes responded to Becker's petition for transfer on May 17, 2011. On January 18, 2012, the Indiana Supreme Court reversed the court of appeals and affirmed the trial court's decision.

Likes was insured under several Lawyers' Professional Liability Insurance policies issued by the Bar Plan. The first policy entered into effect on December 1, 2009, and was renewed on a yearly basis. The policy at issue is a claims made policy, Policy No. 0010002-2011, effective from December 1, 2011, through December 1, 2012 (the Policy). The renewal application for this Policy was signed by Likes on November 14, 2011.

In its Exclusions section, the Policy provided, in pertinent part,

> III. EXCLUSIONS
>
> THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT OF:
>
> * * *
>
> L. A Claim against an Insured who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim.

(Appellant's App. pp. 442-43).

On November 2, 2012, Whitaker filed a Complaint for damages for legal malpractice against Likes based on the dismissal of his negligence cause against Becker. On December 7, 2012, Likes notified the Bar Plan of Whitaker's Complaint. Thereafter, on December 19, 2012, the Bar Plan declined coverage and indemnification, stating, in pertinent part:

> Although there is some discrepancy with regard to your notice in 2012, you advised that your first notice to [t]he Bar Plan about this matter was made on January 27, 2012, following the Indiana Supreme Court's decision. As you know, the [s]upreme [c]ourt's decision was rendered on January 18, 2012. The [t]rial [c]ourt, however, dismissed [Whitaker's] lawsuit and awarded sanctions on **March 16, 2010**.
>
> In addition, your renewal application submitted to [t]he Bar Plan on November 15, 2010 and November 14, 2011, specifically inquired whether the firm or any attorney in the firm had "knowledge of any incident, circumstance, act or omission which may give rise to a claim." The responses on both applications were "no."
>
> Based on the foregoing and our review, you were aware of circumstances which could give rise to a claim, as early as March 16, 2010, when the [t]rial [c]ourt dismissed [Whitaker's] lawsuit and awarded sanctions. The dismissal and award of sanctions occurred during the policy period of December 1, 2009 through December 1, 2010. However, your first notice to [t]he Bar Plan was not until January or March 2012, during a different policy period.
>
> Consequently, we must respectfully decline coverage of defense and coverage in this matter.

(Appellant's App. p. 425) (emphasis in original).

[10] On March 4, 2013, Likes filed an Answer to Whitaker's Complaint, as well as a Third-Party Complaint, adding the Bar Plan as a Third-Party defendant. On May 9, 2013, the Bar Plan filed an Answer, Counter-Claim, and Cross-Claim. On May 9 and July 8, 2013, Whitaker responded to the Counter and Cross Claim.

[11] On July 22, 2014, the Bar Plan filed its motion for summary judgment to which Likes filed an opposition, as well as his own cross-motion for summary judgment on October 22, 2014. On November 18, 2014, the Bar Plan responded to Likes' cross-motion for summary judgment and, on the same day, moved to strike inadmissible testimony of Likes' expert witness. Likes opposed the Bar Plan's motion to strike on December 31, 2014.

[12] On January 7, 2015, the trial court heard arguments on the parties' respective motions for summary judgment and the Bar Plan's motion to strike. On February 2, 2015, the trial court issued its summary judgment in favor of Likes and denied the Bar Plan's summary judgment motion, and in the same order, granted in part and denied in part the Bar Plan's motion to strike.

[13] The Bar Plan now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Summary Judgment*

### A. Standard of Review

[14] Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[15] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

[16] We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its Judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id*. However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id*.

### B. Material Misrepresentation

[17] The Bar Plan contends that Likes is not entitled to coverage under the Policy because Likes failed to properly notify the insurance carrier of his potential liability. Specifically, the Bar Plan argues that at the time Likes signed his renewal application of the Policy, he had knowledge or should reasonably have known that the trial court's dismissal of the underlying cause could give rise to Whitaker's legal malpractice claim.

[18] An insurance policy is a contract, and as such is subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). Interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). As such, cases involving contract interpretation are particularly appropriate for summary judgment. *Id*. We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless." *Fisher v. Heymann*, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), *trans. denied*.

[19]   Where the terms of a contract are clear and unambiguous, we will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms. *Id.* If necessary, the text of a disputed provision may be understood by referring to other provisions within the four corners of the document. *Claire's Boutiques, Inc. v. Brownsburg Station Partners, LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013). The four corners rule states that where the language of a contract is unambiguous, the parties' intent is to be determined by reviewing the language contained within the "four corners" of the contract, and "parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence." *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004). Extrinsic evidence cannot be used to create an ambiguity. *Id.*

[20]   Likes' Policy is a "claims made" policy. "A 'claims made' policy links coverage to the claim and notice rather than to the injury." *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 522 (Ind. Ct. App. 2000) (citing *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 1998)), *trans. denied*. Thus, a 'claims made' policy protects the holder only against claims made during the life of the policy. *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3 (1978)).

[21]   The Policy required Likes to notify the Bar Plan during the Policy period if, at some point during that Policy period, Likes, "becomes aware of a specific incident, act or omission while acting in a professional capacity providing Legal Services, which may give rise to a Claim[.]" (Appellant's App p. 439). This

notice requirement "is not simply the part of the insured's duty to cooperate, it defines the limits of the insurer's obligation." *Paint Shuttle, Inc.*, 733 N.E. 2d at 522. That is, "the notice requirement is 'material, and of the essence of the contract.'" *Id.* at 520 (quoting *London Guarantee & Accident Co. v. Siwy*, 66 N.E. 481, 482 (Ind. Ct. App. 1903)). This means that "[t]he duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its insured." *Id.* (citing *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993)). And "[w]hen the facts of the case are not in dispute, what constitutes proper notice is a question of law for the court to decide." *Id.*

[22] The Bar Plan now argues that Likes did not properly notify it of his potential liability because Likes failed to advise it as soon as the law firm had a reasonable basis to believe that it had committed acts or omissions which could give rise to a malpractice claim, as required under the Policy. The Bar Plan asserts that, at the time of the renewal application for the Policy and prior to the Policy taking effect, Likes knew or reasonably should have known that it had committed such acts or omissions. "As an Indiana attorney doing appellate work, he knew the March 2011 favorable [c]ourt of [a]ppeals opinion was subject to a pending Petition to Transfer and thus, as a matter of law, was not a final decision upon which he could rely in November 2011 [at the time of the renewal application] to avoid revealing the situation regarding the dismissal." (Appellant's Br. p. 17). As such, the Bar Plan relies on the exclusionary language of the Policy to deny coverage to Likes.

[23] In response, Likes contends that the Exclusion provision of the Policy is not applicable as "the undisputed evidence establishes that at the time Likes submitted his application for the 2011 Policy, this [c]ourt had handed down its opinion reversing the dismissal of Whitakers' personal injury claim. Accordingly, there was no known potential claim." (Appellee's Br. p. 6).[1]

[24] Thus, the proper question is whether, at the time of its application for renewal, Likes had knowledge or should have had reasonable knowledge of an act or omission on its part that might reasonably be expected to be the basis of a malpractice claim by Whitaker. Responding to this question affirmatively, the Bar Plan relies on *Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336 (7th Cir. 2013).

[25] Even though *Koransky* is a federal decision, the Seventh Circuit Court applied Indiana law in evaluating the application of the professional liability insurance Koransky had entered into with the Bar Plan. Due to an accidental misfiling in Koransky's office, a real estate sale was rescinded by the seller of the property. *Id*. at 339. The buyer, Koransky's client, initiated a professional malpractice claim against its counsel. *Id*. Meanwhile, and prior to the commencement of the law suit, Koransky was in the process of renewing its professional liability insurance policy with the Bar Plan. *Id*. In completing its application for

---

[1] Throughout his appellate brief, Likes relies on the affidavit of his expert to support his claims with references to the custom and practice in the professional and liability insurance and underwriting industry. However, because we conclude in the second issue that these statements are inadmissible, we will not respond to Likes' arguments relying on those parts of his expert's affidavit.

renewal, Koransky responded in the negative to the question: "Does the firm or any attorney or employee in the firm have knowledge of any accident, circumstance, act or omission, which may give rise to a claim not previously reported to us?" *Id*. Thereafter, the Bar Plan issued Koransky a new policy. *Id*. at 340. Relying on the same exclusionary provision as in the instant case, the Bar Plan denied coverage, claiming that Koransky did not properly notify it of his potential liability. *Id*. at 342.

[26] Invoking the exclusionary language, the Seventh Circuit Court rephrased the issue before it as "whether in February and March 2007, prior to the 2007-08 policy's effective date, [Koransky] had knowledge of an act or omission on its part that might reasonably be expected to be the basis of a malpractice claim by Buyer." *Id*. at 343. Analyzing the facts, the Seventh Circuit Court concluded that "[a] reasonable attorney in [Koransky's] position would realize that his client might bring a malpractice claim against him because, as a result of the attorney's mistake, Seller was refusing to complete the negotiated sale." *Id*. at 343. Koransky objected and noted that

> it had no reason to think that the [real estate] deal was truly doomed because it had on good authority—a former Alabama Supreme Court Chief Justice—that the Alabama court would not exercise jurisdiction and Buyer's Ohio counsel informed [Koransky] that the contract was enforceable because Ohio law does not require delivery.

*Id*. at 343. The Seventh Circuit rejected the argument because "whether a court would eventually rule in favor of [Koransky's] former client is irrelevant. The

question is whether [Koransky] had reason to believe that its acts or omissions may result in a claim for malpractice." *Id.* (emphasis in original). As the court agreed that it "may well be difficult to determine exactly when an act or omission 'might reasonably be expected to be the basis' of a malpractice claim," the court opined that

> [o]nce the Alabama case was filed, [the law firm] knew or should have known that the only thing standing between it and a probable malpractice claim was the question of whether the Alabama court would exercise jurisdiction. No matter how we construed the record, it is clear that a reasonable attorney would have recognized that his failure to deliver the contract, in light of the communications and activity that quickly followed, was an omission that could reasonably be expected to be the basis of a legal malpractice claim.

*Id.* at 343-44.

[27] While we agree with *Koransky* that reasonable minds could differ on the interpretation of the exclusionary provision language, as in *Koransky*, we conclude that the evidence clearly designates that Likes' omission to timely and correctly respond to interrogatories and the trial court's subsequent dismissal of the cause could reasonably be expected to trigger a malpractice claim. *See Kessel v. State Auto. Mut. Ins. Co.*, 871 N.E.2d 335, 338 (Ind. Ct. App. 2007) (noting that contract terms are ambiguous "where a reasonable person could find the terms are susceptible to more than one interpretation"). On March 16, 2010, the trial court dismissed Whitaker's claim against Becker for damages resulting from a car accident based on Likes' failure to respond to Becker's

interrogatories and deliberate concealment of certain evidence. This court subsequently reversed the trial court on March 29, 2011. At the time of the appellate reversal, Likes could reasonably affirm that he had no reason to believe any of his acts or omissions "may result in a claim for malpractice." *Id.* at 343.

[28] However, all that changed on April 28, 2011, when Becker filed his petition for transfer to the supreme court. At that point, Likes was put on notice that Becker was pursuing an affirmance of the trial court's dismissal of his cause. Therefore, because of the severity of the trial court's remedy—dismissal of the cause—any reasonable attorney in Likes' position would realize that his client might pursue a potential legal malpractice claim against him should the supreme court affirm the trial court. Accordingly, when Likes signed his renewal application on November 14, 2011, Likes knew or reasonably should have known that the only thing standing between him and a probable malpractice claim was the supreme court ruling. Therefore, he should have disclosed these facts on his application for renewal.

[29] Relying on *French v. State Farm Fire & Cas. Co.*, 950 N.E.2d 303 (Ind. Ct. App. 2011), *trans. denied*, Likes now asserts that "the Bar Plan may only rescind the policy of insurance if the misrepresentation was material to the risks involved." (Appellee's Br. p. 10). In support of his claim, Likes points to the Bar Plan's renewal of the Policy in the following year, November of 2012, even though the Bar Plan was aware of the pending legal malpractice claim. Therefore, Likes maintains that "at the very least, a genuine issue of material fact existed [] as to

whether any alleged misrepresentation contained in the application for the 2011 Policy was material." (Appellee's Br. p. 11).

[30] Nevertheless, we find *French* not dispositive to the cause before us. *French* pertained to coverage under a homeowners' policy, which is a conventional liability insurance policy. *French*, 950 N.E.2d at 306. Conventional liability insurance policies are "occurrence policies," which link coverage to the date of the tort rather than to the suit. *Paint Shuttle, Inc.*, 733 N.E.2d at 522. On the other hand, a "claims made policy," like the one before us, links coverage to the claim and notice rather than to the injury. *Id*. Whether Likes properly notified the Bar Plan of a claim under its Policy has no bearing on the Bar Plan's business decision as to whether a subsequent policy will be issued. Moreover, even if proper notification can be excused by waiver or acquiescence by the insurance company, as proposed by Likes, here, the Bar Plan's conduct belies the opposite. Throughout the proceedings, the Bar Plan's acts consistently reflect adherence to the terms of its Policy.

[31] Accordingly, based on the designated evidence we conclude that because Likes knew or reasonably should have known of the potential legal malpractice claim at the time of the renewal application of the Policy, his failure to timely notify

the Bar plan thereof now precludes coverage under the Policy's exclusionary provision.[2]

## II. *Motion to Strike*

The Bar Plan maintains that, while the trial court granted its motion to strike in part, the trial court abused its discretion in admitting certain paragraphs included in Likes' affidavit and in the affidavit of Likes' expert. These affidavits were designated in Likes' response to the Bar Plan's motion for summary judgment and cross-motion, and the Bar Plan now contends that these documents contained "legal conclusions, speculation, and parol evidence," which have no bearing on this case. (Appellant's Br. p. 25).

The standard of review for admissibility of evidence is an abuse of discretion. *Blocher v. DeBartolo Properties Management, Inc.*, 760 N.E.2d 229, 233 (Ind. Ct. App. 2001), *trans. denied.* The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Affidavits in support of or in opposition to a motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides that:

> [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

---

[2] Because we decide this cause based on the exclusion clause of the Policy, we will not address the Bar Plan's alternative argument, whether the insurance company is entitled to rescission of the Policy.

competent to testify to the matters stated herein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The affidavit requirements of Ind. Trial Rule 56(E) are mandatory and a trial court considering a summary judgment motion should disregard inadmissible information contained in supporting or opposing affidavits. *McCutchan v. Blanck*, 846 N.E.2d 256, 260 (Ind. Ct. App. 2006). A party offering the affidavit bears the burden of establishing its admissibility. *Id*. Because we already determined that the contested terms of the contract are ambiguous, we are not constricted to the terms of the contract, but can consider extrinsic evidence. *See Kessel*, 871 N.E.2d at 338.

## A. Likes' Affidavit

[34] The Bar Plan contends that paragraph 4 of Likes' affidavit should have been stricken by the trial court as it contained "inadmissible self-serving legal conclusions." (Appellant's Br. p. 25). Paragraph 4 of Likes' affidavit affirms

4. Based upon the Opinion of the [c]ourt of [a]ppeals, Affiant did not have any knowledge of any incident, circumstance, act or omission which may give rise to a claim not previously reported to the [Bar Plan] at the time he executed the Renewal Application.

(Appellant's App. p. 663).

[35] While, at first glance, it appears that this paragraph rephrases the decision reached by this court in the underlying cause, this is not the case. The appellate decision, issued on March 29, 2011, and subsequently vacated and reversed by the supreme court, concluded that based on fairness and equity the trial court had abused its discretion in dismissing the cause. We noted that Likes was not aware that the trial court was considering the "death knell" sanction of dismissal and the arguable misrepresentation by Likes in the interrogatory response merely resulted in "a lack of proper diligence on the part of [Likes]." *Whitaker v. Becker*, 946 N.E.2d 51, 57 (Ind. Ct. App. 2011), *trans. granted and vacated*, 960 N.E.2d 111 (Ind. 2012). Viewed in this light, Likes' affirmation amounts to a legal conclusion which he hopes we will reach in this matter. As an affiant may not testify to a legal conclusion, the trial court abused its discretion by admitting paragraph 4 of Likes' affidavit. *See* Ind. Evid. R. 704.

## B. Expert's Affidavit

[36] Ind. Evidence Rule 702 relates to the admissibility of expert testimony. It assigns to the trial court a gatekeeping function of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Lytle v. Ford Motor Co.*, 814 N.E.2d 301, 309 (Ind. Ct. App. 2004), *trans. denied*. The Rule states:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

However, where, as here, an expert's testimony is based upon the expert's skill or experience rather than on the application of scientific principles, the proponent of the testimony must only demonstrate that the subject matter is related to some field beyond the knowledge of laypersons and that the witness possesses sufficient skill, knowledge, or experience in the field to assist the trier of fact in understanding the evidence or determining a fact in issue. *Lytle*, 814 N.E.2d at 308-09.

[37] In the present case, the Bar Plan merely takes issue with Likes's expert's, Ty R. Sagalow (Sagalow), personal knowledge about the specific Bar Plan's policies and underwriting process but does not dispute Sagalow's qualification as an expert of the insurance industry per se. Specifically, the curriculum vitae attached to Sagalow's affidavit details that he is a thirty-year veteran of the insurance industry who specializes in, among other things, professional liability insurance.

[38] Turning to the affidavit itself, the Bar Plan takes issue with paragraphs 15 (second sentence), 17 to 24, and 26, which read as follows:

> 15. [] This is the only application of relevance in this case as this was the sole application for the 2011 Policy.

> 17. Based on the custom and practice of the professional liability insurance and underwriting industry, there was no act or incident

as of the date of the insurance application for the 2011 Policy which reasonably would give rise to a potential claim against Likes as a result of the Opinion of the [c]ourt of [a]ppeals.

18. Based on the custom and practice of the professional liability insurance and underwriting industry, Exclusion L of the 2011 Policy, the known wrongful fact exclusion, has no application in this case for the same reason, that is because at the time of the policy effective date, the [c]ourt of [a]ppeals's opinion in favor of Likes has been issued. It was not until after the inception date of the 2011 Policy that the Indiana Supreme Court reversed the opinion of the [c]ourt of [a]ppeals. At that point, Likes advised the Bar Plan of the circumstances that could give rise to a claim. It did not, in fact, give rise to a claim until many months later, on November 12, 2012. There is no dispute between the parties that Likes timely reported the claim under the 2011 Policy.

19. Based upon the custom and practice of the professional liability insurance and underwriting industry, Exclusion L relates to the knowledge of the insured at the time of the application for the policy of insurance at issue, and not globally at all periods of time prior to that. This is especially true here, where any such prior knowledge became moot as a result of the reason of the [c]ourt of [a]ppeals opinion of March 29, 2011.

20. Accordingly, neither the application for insurance nor Exclusion L excludes coverage for the Whitakers' claim.

21. Further, if Likes had provided notice to the Bar Plan of the Whitakers' potential claim immediately after the dismissal of the Whitakers' case on March 16, 2010 (as the Bar Plan would want one to believe he should have), there would have been coverage for the Whitakers' claim under the policy of Professional Liability Insurance issued by the Bar Plan, Policy No: 0010002-

2009, effective from December 1, 2009 through December 1, 2010 ("2009 Policy").

22. Specifically, pursuant to the Discovery Clause (Clause C of Part ii, Coverage) if the insured gives written notice to the Bar Plan of a specific incident, act or omission, which may give rise to a claim for which coverage is provided under the policy, then any claim that may subsequently be made against the insured arising out of such incident, act or omission, is deemed, for the purposes of insurance, to have been made during the policy period when the notice was given.

23. Accordingly, any attempt by the Bar Plan to refuse to issue a policy in the future as a result of such notice would have been unavailing, as there would be coverage for the Whitakers' claim under the 2009 Policy. Since the terms, conditions, limits and retention of the 2011 Policy and 2009 Policy were the same, and there were no other claims under either policy, there would have been coverage for Likes even if he acted as the Bar Plan would wish.

24. In her affidavit filed in connection with the Motion for Summary judgment, Valerie Polites, Senior Claims Counsel for the Bar Plan, asserts that had the facts and circumstances of the Whitaker matter been disclosed to the Bar Plan, the Bar Plan may have declined to issue the 2011 Policy.

* * *

26. Accordingly, the Bar Plan, with full knowledge of the Whitakers' claim, issued the 2012 Policy to Likes.

(Appellant's App. pp. 656-58).

[39] Although Sagalow claims that his opinions are derived from the insurance industry's custom and practice, nowhere in his affidavit does Sagalow clarify what these customs actually are or identify his sources therefor. Rather, the paragraphs touch immediately upon the heart of the matter and the issue this court is prevailed upon to answer, *i.e.*, whether Likes is entitled to coverage under the Policy and, as such, the paragraphs propone a legal conclusion. *See* Ind. Evid. R. 704. A mere generalized statement of "based on the custom and practice of the professional liability insurance and underwriting industry" without any further clarification does not lift these paragraphs from the impermissible realm of legal conclusion into valid expert opinion. Accordingly, we conclude that the trial court abused its discretion in admitting paragraphs 15 through 23 of Sagalow's affidavit.

[40] With respect to paragraph 24, we note that this is a correct paraphrasing of Valerie Polites' affidavit, and an expert may utilize hearsay information in forming his opinion when "the expert has been made aware of [the facts or data] or personally observed." Ind. Evid. R. 703; *Jackson v. Trancik*, 953 N.E.2d 1087, 1093 (Ind. Ct. App. 2011). Thus, we conclude that the trial court properly admitted paragraph 24. However, paragraph 26 again draws a legal conclusion with respect to the knowledge of the Bar Plan, which is directly at issue in this cause. Therefore, paragraph 26 amounts to an impermissible legal conclusion which should have been stricken by the trial court.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in granting summary judgment to Likes because the undisputed evidence establishes that Likes failed to timely notify the Bar Plan of the Claim and therefore is now precluded from coverage under the Policy. In addition, we find that the trial court abused its discretion when it admitted paragraph 4 of Likes' affidavit and paragraphs 15-23 and 26 of Sagalow's affidavit.

Reversed.

Brown, J. and Altice, J. concur